vessel, if the power of the winch was great enough something must have broken or given way.    It became a question whether the hook, the block, or the rope should first break.    The question was solved in this case by the breaking of the hook.    From the failure of an appliance under these circumstances no such presumption as to its insufficiency or defective condition can be indulged in, as in a case where the appliance fails in the ordinary conduct of the work.    Here the hook had served its purpose for a day and a half, and had failed only when the extraordinary strain was put upon it.    On the whole, we are of opinion that the evidence was not sufficient to justify the submission of the case to the jury, and that the decision of the learned trial judge was correct.

The judgment appealed from should be affirmed, with costs.    All concur.

(43 App. Div. 437.)

## In re GALLUP'S WILL.

(Supreme Court, Appellate Division, Second Department.    October 3, 1899.)

WILLS—CODICIL—ATTORNEY AND CLIENT—UNDUE INFLUENCE.

A testatrix, about five weeks after the death of her attorney who had been the custodian of her property and her trusted friend and business adviser for a long period, and to whom she left almost all of her estate, worth about $14,000, and made her sole executor, executed a codicil making a like provision for another attorney, who it did not appear had known her before her first attorney's death.    It purported to be for services rendered, but it does not appear that he ever rendered her any services.    It was prepared by him, and in subscribing it he held and guided her hand, as she appeared unable to sign it otherwise.    The witnesses never saw her before, and were brought into her presence by him.    They testified that she spoke of the paper as her codicil, but a janitress in the building where she lived, who brought it to her from a bureau drawer at her request, swore that she called it merely a blue paper.    She was 90 years old, and died in less than three weeks; and there was some evidence, but not entirely undisputed, that she was not on good terms with her relatives, with none of whom she lived.    *Held*, that the circumstances of its execution were suspicious, and necessitated further explanation to show that she had full knowledge of the instrument, and that she executed it without undue control.

Appeal from surrogate's court, Kings county.

In the matter of the probate of the last will and testament of Emeline Gallup.    From a decree of the surrogate court, so far as the same relates to the instrument purporting to be a codicil to said will, Evangeline Close and others, contestants, appeal.    Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frederic A. Ward, for appellants.

Rastus S. Ransom, for respondent Lauren Redfield.

WILLARD BARTLETT, J.    No question is raised in this proceeding in respect to the validity of the will of Emeline Gallup which was executed on September 1, 1893.    The contest relates solely to the codicil, executed about five years later, on August 6, 1898, when the decedent was in the ninetieth year of her age.    She died in less than

three weeks after the execution of this codicil. By the will, after directing the payment of her debts and funeral expenses, and bequeathing $300 to Greenwood Cemetery, the testatrix, in the third clause, devised and bequeathed the residue of her estate to Robert Wilson, residing at No. 329 Greene avenue, in the city of Brooklyn, and appointed him her sole executor. On July 1, 1898, Mr. Wilson died. At and shortly befor the time of his death he appears to have had the custody of Mrs. Gallup's property, and charge of her business affairs. He does not seem to have been in any wise related to her, and is described in the brief for the proponent simply as a friend who cared for her wants, and also for her money in bank, and bonds and mortgages. The codicil in question here is alleged to have been executed a month and six days after Mr. Wilson's death. After referring to the execution of the will dated September 1, 1893, it provides as follows:

"Robert Wilson in my said will named having died, I do hereby give, devise, and bequeath all the rest, residue, and remainder of my estate in the third clause of said will mentioned unto Lauren Redfield, counselor at law, of the borough of Manhattan, in the city of New York, absolutely, to be by him accepted and received as full compensation for any and all services by him rendered and to be rendered to me in my lifetime and in the settlement of my estate after my decease; and I nominate and appoint the said Lauren Redfield the sole executor of my said will. In all other respects I confirm and republish my said will."

The estate of the testatrix amounted to between $13,000 and $14,-000. The effect of the codicil, if valid, is to give almost all of this to Mr. Redfield, who does not appear to have been known at all to Mrs. Gallup during the lifetime of Mr. Robert Wilson, the previous residuary legatee, and who is not shown ever to have rendered any services whatever to the lady, unless it was a service to draw a codicil by which he himself acquired all her property, with the trifling exception of a legacy of $300 to Greenwood. The circumstances under which the codicil was executed were peculiar, even as described by the witnesses for the proponent. One of these witnesses was Mr. William D. Bartles, a friend of Mr. Redfield. The other was Dr. John W. Barlow, a physician living in the same house with Mr. Bartles. Neither of these gentlemen had ever seen Mrs. Gallup until the 6th of August, 1898. Mr. Bartles tells us that Mr. Redfield showed him a letter saying that Mrs. Gallup was ill, and asked him if he could recommend a doctor who could go to see her at once, whereupon he mentioned the name of Dr. Barlow as that of a skillful physician. Dr. Barlow was then communicated with by telephone, and undertook to visit Mrs. Gallup at once. Mr. Bartles, although he had no acquaintance whatever with the old lady, volunteered to go, also, if he could be of any use; and Mr. Redfield said he would like to have him go. Accordingly, we find Mr. Bartles, Dr. Barlow, and Mr. Redfield—two of them utter strangers to Mrs. Gallup, and the other apparently only a recent acquaintance—meeting at her apartments in Brooklyn, at 25 Tompkins avenue, about the middle of this day in August. Mrs. Gallup was sitting up. The doctor found her suffering from articular rheumatism. Mr. Redfield had brought a check for rent, which he asked her to indorse. She ex-

pressed doubt of her ability to comply with this request, on account of the rheumatism in her hands, whereupon Mr. Redfield offered to assist her; and, with his guidance of her hand, Mrs. Gallup wrote the desired indorsement. What followed is thus narrated by the doctor:

"Then she said, 'That is very easily done; now let us have the codicil;' and she asked the janitress to go and get the codicil or paper. Q. Did she say 'codicil'? A. Yes; I think she did. Q. Go on. A. She made the remark, 'Let us sign the codicil,' or 'Have that signed.' The janitress went out and got these papers, and brought them out, and they were laid on the table, and the same process was gone through. I offered her my pen. Mr. Redfield guided her hand in signing this codicil. Then she said, 'I am glad that is done,' or something to that effect; 'I am glad that is finished.' Then Mr. Redfield asked her if she wished Mr. Bartles and myself to sign as witnesses, and she said, 'Yes'; and Mr. Bartles signed, and likewise myself. I signed it in her presence; in the presence of all of us; in the entirety. Q. What did she say the paper was? A. I believe there was some remark made with reference to this being her codicil. She wanted it signed. I think Mr. Redfield asked her if this was her codicil, and if she had read it and was satisfied with it; she said, 'Yes, perfectly;' that she had it with her, and she knew what the contents was."

The testimony of Mr. Bartles gives substantially the same account of the execution of the codicil. The only other person present, besides the testatrix, the two newly-introduced witnesses, and the beneficiary, was Mrs. Annie Hillestrom, the janitress who brought the document from a bureau in the dining room at Mrs. Gallup's request. She swears that the old lady did not use the word "codicil" at all but called it merely a blue paper. The surrogate, however, was not bound to accept her version of the transaction in this respect, rather than the testimony of Mr. Bartles and Mr. Barlow.

The case does not afford us much light in reference to the relations between the testatrix and the members of her family or other persons who might naturally be the objects of her bounty. According to Mr. Redfield's petition for probate, she had a brother and two nephews residing at Troy, N. Y.; a niece residing at Poughkeepsie; three nieces living in Michigan; and her only other relatives were a granddaughter of a deceased sister, and the child of a deceased nephew, whose residences have not been ascertained. The contestants in the present proceeding are the Troy nephews and the Michigan nieces. Some time after the execution of the codicil, Mrs. Gallup, according to the testimony of Dr. Barlow, told him that she was not on good terms with her family, and was not going to leave them anything at all; that she had not been on good terms with any of them for years. He also states that she rejected his suggestion, towards the termination of her illness, that she should send for some of her relatives. On the other hand, a grandniece of Mrs. Gallup gave evidence concerning a friendly call which she made on her great aunt in 1891, when she spent the greater part of the day with the old lady, who treated her in a most kindly and affectionate manner. This witness, however, was not allowed to tell what Mrs. Gallup said about other members of her family, although I do not see why such statements should have been deemed too remote, in view of the evidence received from Dr. Barlow to the effect that she declared that

she had not been on good terms with any of them for years. If we assume, however, that Mr. Robert Wilson, the principal legatee named in the will, had been the custodian of Mrs. Gallup's property for a long period, and her trusted friend and business adviser, there was perhaps nothing strange in the fact that she should bequeath her property to him, to the exclusion of relatives living at a distance from her home, and whom she seldom saw or heard from. But after his death, and the consequent lapse of the residuary legacy in the will, when Mr. Redfield appears upon the scene, no similar assumption can be indulged in to explain the preference shown to that gentleman. As has already been pointed out, there is no proof that Mrs. Gallup had any acquaintance with him before Mr. Wilson died, yet only five weeks later she leaves him upward of $13,000, as compensation for services rendered or to be rendered, although it does not appear that he has ever rendered her any services whatever; and this result is accomplished by a paper written by the beneficiary himself, which the giver is unable to sign, except by allowing him to hold and guide her hand, and which is witnessed by two persons whom she never saw before in her life, and who are brought into her presence at his instance. Under the settled law of this state, I think some further explanation than has yet been given should be furnished before this instrument is allowed to stand as a valid codicil to the will of Emeline Gallup. A will made by a client in favor of his lawyer is viewed with great suspicion by the courts. Marx v. McGlynn, 88 N. Y. 357, 371. While it is now held that the mere fact that the beneficiary is the attorney of the decedent does not create a presumption that a testamentary gift was procured by undue influence, as it would in the case of a gift inter vivos, yet such gifts are scrutinized most carefully, and will not be sustained where the circumstances are suspicious, unless those circumstances are satisfactorily explained. The language of Andrews, J., in Re Smith's Will, 95 N. Y. 516, 523, is singularly applicable to the facts of the case at bar:

"The mere fact, therefore, that the proponent was the attorney of the testatrix, did not, according to the authorities cited, create a presumption against the validity of the legacy given him by the will. But, taking all the circumstances together,—the fiduciary relation, the change of testamentary intention, the age, the mental and physical condition, the fact that the proponent was the draftsman and principal beneficiary under the will, and took an active part in procuring its execution, and that the testatrix acted without independent advice,—a case was made which imposed upon the proponent the burden of satisfying the court that the will was the free, untrammeled, and intelligent expression of the wishes and intention of the testatrix."

Many of the rules by which the present appeal is to be determined were also discussed by Judge William F. Allen, when he was in the supreme court, in Lake v. Ranney, 33 Barb. 49. Referring to the English case of Scoular v. Plowright, 28 Law T. 194, in which the opinion was written by Dr. Lushington, he said:

"It was there decided (and with the decision all the cases in our own courts agree) that in ordinary cases, where there is execution and capacity, the validity of a will is established; but when the will is prepared by the party principally benefited an exception prevails, and it is necessary to prove that the testator had full knowledge of the instrument and its contents, and executed

it freely and without undue control, especially if the circumstances are suspicious."

I do not deem any further discussion necessary to show that the explanation which the courts have uniformly held to be necessary in this class of cases is wanting here.

Each of the authorities cited in the oral opinion of the learned surrogate is readily distinguishable from the case at bar. In Cudney v. Cudney, 68 N. Y. 148, the party charged with having exercised undue influence was a son of the testator. In Re Mondorf's Will, 110 N. Y. 150, 18 N. E. 256, it was held that the simple fact that all of a testator's estate was given to a stranger in blood did not warrant the inference that the gift had been obtained by undue influence. It is to be noted that in the case cited the will was read twice to the decedent; that he left all his property to a lady with whom he had boarded for several years, having become estranged from his wife; and that the court said there was not the least evidence that this lady ever attempted to influence him in the disposition of his estate.

In my opinion, the decree, so far as appealed from, should be reversed, and an order should be made directing the trial by a jury of the material questions of fact arising upon the issues between the parties to the proceeding.

Decree of the surrogate's court, so far as appealed from, reversed, and issues of fact directed to be tried by a jury; costs to abide the final award of costs. All concur.