In the Matter of the Probate of the Will of John J. Cotter, Deceased.

Surrogate's Court, New York County, January 23, 1943.

*Harold H. Corbin, Leonard P. Moore* and *James K. Crimmins* for Robert D. Shea, petitioner.

*Harold J. Baily* for Mary Cotter Martin, respondent.

*Leigh K. Lydecker* for Louise W. Cotter, as committee of Esmonde C. Cotter, an incompetent, respondent.

*Walter L. Bryant* for President and Fellows of Harvard College, respondents.

*William Logan, Jr.,* for Helen H. Cusack and others, respondents.

*Donald T. Mullane,* special guardian.

FOLEY, S. The evidence in this contested probate proceeding was entirely insufficient to carry the case to the jury. A verdict was accordingly directed in favor of the proponent upon all the questions raised by the objections filed by the contestants. The will is admitted to probate.

The testator was graduated from Harvard College with highest honors in the class of 1887. He graduated from Harvard Law School and was admitted to the Bar in his home State of Indiana and in the States of Massachusetts and New York. He practiced law in this State for a short period. He then went into the business of the publication and sale of books, which became his career until his retirement from active business. At the time of the execution of his will he was eighty-one years of age. The will was executed on August 6, 1942, at New York Hospital. He died there a month later, on September 6, 1942.

The oral and particularly the documentary evidence conclusively showed that he retained the keenest mental strength and physical vigor for a man of his years up to within a few days before his death. He kept a diary with distinctive detail of daily happenings. He left an estate of approximately $240,000. He kept meticulous records of his investments, the changes in them and the income derived from them. The withdrawal of moneys from his bank account was accurately noted, even during his last illness, on his checkbook stubs. He prepared his own income tax returns of which the last one was made a few months before the execution of the will. His correspondence likewise evidences the retention of a keen mentality. The style and contents of his letters were those of a cultured and well-read man.

In the contested will he made specific gifts of securities to Harvard College valued at the sum of $65,000 for the establishment of a fund for undergraduate students. He gave direction that the source of these contributions be identified by his own name as " John Jerome Cotter Scholarships ". He made pecuniary legacies to his sister and to certain other relations, and to a friend. The residue was given to his nephew, Robert D. Shea.

Objections to the probate of the propounded instrument were filed by a sister of the testator, nephews and nieces and a grandniece. They raised the usual issues of invalidity in the execution of the will, lack of testamentary capacity, undue influence, and fraud. The principal issue litigated at the trial was based upon a charge that Robert D. Shea, the nephew of the testator and the residuary legatee, had unduly influenced him and had procured the making of the will in his favor by misrepresentation of the legal effect of its terms.

The testimony of the subscribing witnesses established compliance with the formal requirements of our Statute of Wills. The execution was supervised by an experienced attorney. He and two other attorneys were the subscribing witnesses. The testator was himself a lawyer and, as part of the transaction, read aloud the *in testimonium* clause. A direction in favor of the proponent, that the will was properly executed, thus became imperative under the authorities. (*Matter of Katz,* 277 N. Y. 470; *Matter of Ewen,* 206 App. Div. 198; *Matter of Price,* 254 App. Div. 477, affd. 279 N. Y. 700; *Matter of Levy,* 234 App. Div. 868 and 235 App. Div. 819.)

Upon the issue of testamentary capacity, all of the witnesses, without contradiction, testified to the remarkable strength of mind and memory possessed by the testator. The attending physician, Dr. Martin, and the nurse were especially convincing upon this issue. The contestants did not present a single witness who testified to the slightest diminution of mental vigor or to impressions of irrationality as to acts and conversations customarily adduced in will contests. The absence of even a scintilla of evidence, therefore, required a direction of verdict that the testator was of sound mind.

Upon the issue of undue influence, the contestants failed to sustain the burden cast upon them by law. Their contentions were based upon mere suspicion, surmise and conjecture, without a foundation of facts.

The nephew of the decedent, who was named as the residuary legatee, was given the bulk of the testator's property. He is

a lawyer. Shortly after the entrance of the testator into the hospital he sent for his nephew and gave him instructions as to the dispositions which he wished to include in his will. The preliminary discussions between uncle and nephew took place on two successive days. The nephew called to his assistance in the drafting of the instrument Mr. Stocker, an attorney employed in the same law office with him. He is a specialist in the law of wills and estates. From that time on, he assumed the preparation of the will until it reached its final form. He also supervised its execution. Much stress was laid by the contestants upon the fact that preliminary drafts of the will gave a pecuniary bequest of $5,000 to the nephew and disposed of the residuary estate in the form of a charitable trust to undesignated charities. The nephew was named as trustee and he was given power to dispose of the income of the fund during the pendency of the trust to eleemosynary institutions, with authority to dispose similarly of the principal at the termination of the fixed period of the trust. There were discussions with the testator as to certain precatory requests for the payment of relatively small amounts to named relatives. Finally, the testator changed the form of the residuary clause from a charitable trust to an outright gift to the nephew. The evidence indisputably established that this change of plan was the result of the voluntary decision of the testator. He was of a strong and resolute character and not of a type susceptible to restraint.

There was not the slightest proof of any coercion, undue influence or imposition practiced upon him in his final determination that his nephew was to receive the residue of the estate. As previously stated, the testator was a lawyer. His three prior wills executed over a long period of years were prepared by him in his own handwriting. The dispositions in the contested paper were natural and logical. His generous bequest to Harvard College carried into effect the sentiment that he had continuously shown for his Alma Mater. His association with his nephew, the residuary legatee, was close and affectionate from the latter's boyhood. He had advised him to go to Harvard College from which he himself had graduated. He supplied the incentive to his nephew to become a lawyer. This nephew was his only relative living in New York, which resulted in continued close contact with him. The association between the testator and his other relations, and particularly the contestants, was remote and even his correspondence with them infrequent. As to some of them, there

was a continued attitude of indifference and even of hostility. They resided in Indiana and in other places distant from New York. The selection of his favored nephew as the principal object of his bounty was, therefore, natural.

Because of the participation of the nephew in the making of the will and the consequent confidential relationship, the contestants sought to raise the inference or presumption of undue influence from the mere relationship. (*Matter of Smith,* 95 N. Y. 516; *Matter of Putnam,* 257 N. Y. 140.) The law, however, creates no presumption of the exercise of undue influence in such situations. The burden of proving it still rests upon the contestants of a will. The duty of explanation, however, is cast upon the attorney who receives the benefit under the will. "The law, recognizing the delicacy of the situation, requires the lawyer who drafts himself a bequest to explain the circumstances and to show in the first instance that the gift was freely and willingly made." (*Matter of Putnam, supra,* p. 143.) It was also pointed out in the opinion of Judge CRANE in that case that attorneys for clients "who intend to leave them or their families a bequest would do well to have the will drawn by some other lawyer." In the present proceeding the nephew obeyed that cautionary instruction. He brought in other counsel. The testator, an attorney himself, had the independent advice of Mr. Stocker, a specialist in the law of wills. Mr. Stocker received the final instructions to be carried into the instrument. He prepared the final draft which was executed. More important, the third subscribing witness was Harold Swain, a lawyer of integrity and long experience in this community. He has been in practice for a period of over fifty-two years. He had been a boyhood friend of the testator and had been a student at Harvard with him. He was present when the final instructions for inclusion in the will were given by the testator. He was present during the entire transaction incident to execution. He heard the testator definitely declare that the paper represented his wishes. He was an entirely disinterested witness. He testified that no importunity or coercion was even attempted. In the entire record there is not a scintilla of evidence that the paper did not represent the voluntary desires of Mr. Cotter, nor is there the slightest evidence of any undue influence by the nephew or by anyone acting with him.

The satisfactory explanation presented here, which dissipates any suspicion, is similar to that given in *Matter of Guidi* (259 App. Div. 652). There, the will was rejected by the Surro-

gate because of the confidential relationship of attorney and client which existed between the beneficiary and the testatrix. The Appellate Division reversed and directed the admission of the will to probate. There, the beneficiary had brought in an independent attorney, who prepared and supervised the execution of the will. Disinterested advice was given. The bequest to the attorney-beneficiary was held, upon the evidence, to have been natural and based upon gratitude and reciprocal affection. The determination of the Appellate Division was affirmed, without opinion, by the Court of Appeals (284 N. Y. 680). In the *Guidi* case, the attorney was only a friend of the testatrix — in the present case, Mr. Shea, the residuary legatee, was the nephew of the testator and the closest relative in affection and association to him.

In *Matter of Connor* (230 App. Div. 163), the attorney who drew the will was not a beneficiary but his sisters were named among the residuary legatees and his daughters were named as contingent remaindermen. There, as here, the attorney was a relative of the testatrix. A denial of probate of the instrument by the Surrogate was reversed and the will directed to be admitted to probate because of the utter absence of evidence of the attorney's having exerted or even having attempted to exert any influence over the testatrix.

In the pending proceeding because of the absence of any evidence of undue influence, a direction of verdict upon this question was required. (*Matter of Ruef,* 180 App. Div. 203, affd. 223 N. Y. 582; *Matter of Brand,* 185 App. Div. 134, affd. 227 N. Y. 630; *Matter of Dowdle,* 256 N. Y. 629; *Matter of Burke.* 276 N. Y. 497; *Matter of Quigly,* 285 N. Y. 772; *Matter of Connor, supra.*)

On the issue of fraud there was no evidence of any form of deception or misrepresentation, and a direction accordingly was required. The statements of the rules of law given to the testator by his nephew and by the attorney who supervised the final drafting of the paper as to the validity of a trust for undesignated charitable beneficiaries were correct. The further statements as to the effect of an outright bequest, unaccompanied by precatory instructions, were also accurate. Questions of the construction of a will are determined as matter of law by the court. The textbooks and the official reports are replete with decisions which have attempted to solve the nuances in interpretation which the testator or the draftsman of his will may or may not have intended.

The suggestions of the contestants here that the jury should **have** been intrusted with the determination of knowledge of

the testator as to the terms of the will border upon the ridiculous. If a will could be contested upon the ground that the maker did not understand the legal effect of technical provisions or phrases in the instrument, a new and fertile source of depleting estates, delaying probate and compelling settlements in many cases would be encouraged. The consequences are appropriately stated in *Atter* v. *Atkinson* (L. R. 1 P. & D. 664, 670): "Suppose that a long will, with a number of complicated arrangements, is read to a competent testator, and is executed by him; if we were permitted, some time after his death, to enter into a discussion as to how far he understood and appreciated the bearings of all the different parts of the will, we should upset half the wills in the country." (*Matter of Webb*, 122 Misc. 129.)

Submit decree on notice admitting the will to probate accordingly.