In the Matter of the Probate of the Will of ELEANOR M. SATTERLEE, Deceased. MABEL S. INGALLS, Appellant; SOL A. ROSENBLATT et al., Respondents.

First Department, February 24, 1953.

*John P. McGrath, Marland Gale* and *Robert Thrun* of counsel (*Hodges, Reavis, McGrath, Pantaleoni & Downey,* attorneys), for appellant.

*Thomas I. Sheridan* and *Daniel J. Madigan* of counsel (*Hartman, Sheridan & Tekulsky,* attorneys), for Sol A. Rosenblatt, respondent.

*Myles J. Lane, U. S. Attorney for Southern District of New York,* for the United States of America, respondent.

*McCormick & Emmerich* for the New York Association for the Blind, respondent.

*Jas. Maxwell Fassett* for Milo S. Gibbs, respondent.

*Nathaniel L. Goldstein, Attorney-General,* for the State of New York, respondent.

*De Forest, Elder & Mulreany* for Presbyterian Hospital in the City of New York, respondent.

*Stanley Goldstein,* special guardian for Sandra S. Ingalls and others, infants, respondents.

*Per Curiam.* Contestant, a sister of decedent, challenged the validity of the will in this case upon the grounds (1) that decedent did not possess testamentary capacity and (2) that the will was procured by the undue influence of proponent, her lawyer and virtual guardian, and a Dr. Hoffman, her doctor. Proponent is the principal beneficiary under the will, and it is alleged that he received the residuary estate upon an agreement with the testator to convey it thereafter to Dr. Hoffman.

Contestant's objections were dismissed and the will admitted to probate by the Surrogate at the conclusion of the contestant's case without either proponent or Dr. Hoffman taking the stand or offering any explanation of the facts and circumstances under which proponent, occupying the highest possible fiduciary relationship to decedent, received the bulk of her estate.

We shall not detail the evidence in the case or make any extended analysis of it. A relatively brief statement of what was brought out at the trial is sufficient to dispose of the appeal and chart the necessary future proceedings.

Decedent was undoubtedly far below normal both physically and mentally. The contention that she lacked testamentary capacity has not been adequately supported. It is clear, however, that she was dependent upon and very susceptible to the influence of people around her. That fact requires that special scrutiny be given to the disposition of the bulk of her estate in favor of one who was in a position to influence her and who occupied a fiduciary relationship toward her.

The evidence shows that decedent was referred to proponent toward the end of 1947; that she left her husband and in March, 1948, consulted proponent about a divorce, which he procured for her; that at the time she left her husband she gave proponent the first of a series of powers of attorney by which he was invested with full and unlimited power over her affairs. By May, 1948, proponent had become the principal beneficiary under her will, drawn by his partner, albeit the legacy was accompanied by a semi-precatory reference to charity. By subsequent wills drawn in proponent's office in November, 1948, and February, 1949, the gift of decedent's residuary estate to proponent was made absolute.

The will in contest in this proceeding, which likewise left the residue to proponent, was drawn by a lawyer not associated with proponent in practice. This lawyer, proffered by proponent as " independent " counsel, was the brother-in-law of proponent's partner who drew the prior wills. The will sequence and attendant circumstances thus hardly indicate the required exercise of independence on the part of decedent and her counsel.

At the same time that decedent came into the charge of proponent, she came into the medical charge of Dr. Hoffman. Proponent and Dr. Hoffman had been close friends for years. The evidence makes it clear that decedent became infatuated with Dr. Hoffman, constantly spoke of him in terms of endearment, and stated to others that they intended to marry, although he was a married man. That she was under his dominance as well as under the dominance of proponent is indicated, and there is support for the charge that the two men collaborated to their benefit and to her detriment.

A trier of the facts might find, in disbelief of proponent's categorical denial, that there was an arrangement to have the lawyer pass the inheritance over to the doctor. At least, it was hardly normal or natural for decedent to leave the bulk of her estate to a stranger of short acquaintance, as was the case when

the will pattern was formed. Surely, in the light of the unusual setting and the highly fiduciary relationship which proponent had assumed toward decedent, it was incumbent on him to come forward and explain his becoming the principal beneficiary under her will, since a will made by a client in favor of her lawyer is received with great suspicion by the courts. (*Marx* v. *McGlynn*, 88 N. Y. 357, 371; *Matter of Smith*, 95 N. Y. 516, 523; *Matter of Gallup*, 43 App. Div. 437, 442; *Matter of Wood*, 253 App. Div. 78, 83; *Matter of Cotter*, 180 Misc. 399, 404.)

The involvement of Dr. Hoffman invited, if it did not require, explanation of some things from him. Neither he nor proponent elected to offer himself for explanation or cross-examination. The suggestion that they would not have been permitted to testify because of the prohibition of section 347 of the Civil Practice Act is not persuasive. It is clear that any objection under section 347 was waived or would have been waived by contestant.

Although the record in the case is a long one and it is unfortunate that there should have to be another trial, we do not feel that we can pass an ultimate judgment upon the case absent an explanation from proponent.

The decree appealed from should be reversed and the matter remanded to the Surrogate for a new trial. We think it is desirable in this case to have a jury trial and so direct (*Matter of Allaway*, 187 App. Div. 87). Settle order.

Peck, P. J., Callahan, Van Voorhis and Breitel, JJ., concur.

Decree unanimously reversed and the matter remanded to the Surrogate for a new trial. We think it is desirable in this case to have a jury trial and so direct (*Matter of Allaway*, 187 App. Div. 87). Settle order on notice. [See *post*, p. 957.]