Joseph A. Cox, S.
An instrument dated January 23, 1962 has been propounded as the last will of this decedent who died a resident of New Jersey. The decedent’s next of kin are his widow, five adult sons, three adult daughters and an infant daughter. There also are 17 grandchildren, the issue of living children of the decedent.
The propounded instrument bequeaths to the widow jewelry and personal property, devises real property to her and creates for her benefit a trust in an amount which, added to the bequests and devises to her, will bring the total gifts to her or for her benefit to the sum of $7,500,000.
Article eighth of the instrument creates a trust for the primary benefit of the testator’s daughters. The amount bequeathed to trustees for this purpose is stated to be “ the sum of one MILLION SEVEN HUNDRED THOUSAND DOLLARS ($1,700,000) OU account of each of my daughters who shall survive me and a like amount on account of the issue of each one of my daughters who may predecease me leaving issue me surviving.”
Article ninth provides a similar trust for the primary benefit of the testator’s sons but here the bequest in trust is “ the sum of ONE MILLION POUR HUNDRED AND PIETY THOUSAND DOLLARS ($1,450,000) on account of each of my sons who shall survive me and a like amount on account of the issue of each one of my sons who may predecease me leaving issue me surviving.”
*213 Objections to probate have been filed by the widow and two of the testator’s sons. The objections of the widow contain a ‘ ‘ FIRST, separate and distinct defense and affirmative plea ’ ’ which pleads that the testator intended by article ninth of the propounded paper to bequeath a total sum of $1,450,000 in a single trust with the net income earned by that total sum to be distributed among the sons in equal shares, that it was the testator’s belief that article ninth accomplished this purpose and, if the language of article ninth should be determined to entitle each income beneficiary to the full income from a trust of $1,450,000, the words accomplishing this were inserted without the knowledge and consent of the testator. As a “ second, SEPARATE AND DISTINCT DEFENSE AND AFFIRMATIVE PLEA ” the widow further alleges that, if it be determined that separate trusts of $1,450,000 each are created by the propounded paper, the testator lacked understanding and knowledge of the contents of the instrument. As a “ third, separate and distinct defense and affirmative plea ” the widow alleges that it was represented to the testator that article ninth created a single trust in the total sum of $1,450,000, that the testator relied upon this representation and, if article ninth provides differently, such representation however innocently made, was false, that the execution of article ninth as written was not the free and voluntary act of the testator and the inclusion of particular words in the instrument was a constructive fraud upon the testator. As a ‘ ‘ fourth, SEPARATE AND DISTINCT DEFENSE AND AFFIRMATIVE PLEA ’ ’ the widow alleges that such representation, if innocently made, was false, the execution of article ninth was not the free and voluntary act of the testator and the execution of article ninth was procured by constructive fraud. As separate defenses and affirmative pleas fifth, sixth, seventh and eighth similar allegations are made with respect to article eighth of the propounded paper except that the basic contention is that, in that article, the testator intended a single trust of $1,700,000 and not separate trusts each in such amount. As a “ ninth, separate and distinct defense and affirmative plea ” the widow asserts a right of election under section 18 of the Decedent Estate Law. The relief requested by this objectant is that (1) the court construe article ninth, (2) if the construction shall be adverse to the position of the objectant, the court determine that the words accomplishing this were inserted without the knowledge or understanding of the testator or by reason of constructive fraud upon the testator or by reason of his lack of knowledge and understanding and constituted a constructive fraud upon him and, upon such determination, the court rewrite the instrument to accomplish the objective; *214 of the objectant, (3) in the alternative, article ninth be denied probate, (4), (5) and (6) identical relief be granted with respect to article eighth, (7) the elective right of the widow be safeguarded and (8) the paper be admitted to probate “ only to the extent and in the form and manner determined by the Court.”
The objections of Q-erald T. Devine, a son of the testator, assert that, if the instrument is not admitted to probate in its entirety, it is not a valid will and the whole thereof was executed by mistake without testamentary understanding. This objectant prays that the instrument be admitted to probate in its entirety and any question of construction be reserved for later determination. Richard Gr. Devine, another son of the testator, takes a like position in his objections.
One of the proponents, a nominated executor, has moved for the admission to probate of the propounded instrument with any question of construction reserved or that the instrument be admitted to probate except for articles eighth, ninth, tenth, ELEVENTH, THIRTEENTH, FOURTEENTH and FIFTEENTH Or for an order dismissing the objections to probate or for an order granting summary judgment.
Extensive pretrial examinations have been had and the respective positions of the parties are clear. A record has been created which permits a disposition of the objections to probate upon this motion (Matter of King, 16 A D 2d 614; Matter of Pascal, 309 N. Y. 108).
It is the contention of the widow that the maximum amount to be allocated under article eighth for the benefit of the testator’s daughters is $1,700,000 and the maximum amount to be allocated under article ninth for the benefit of the testator’s sons is $1,450,000. The proponent and objecting sons are seeking the admission to probate of the paper in its existing text but recognize that a construction of the language of the instrument should be had at a later time when this contention of the widow may be considered.
The widow does not make definitive allegations that the propounded instrument was not duly executed or that the testator lacked testamentary capacity or that he was under any form of restraint. The widow’s objections are wholly conditional in that her charges of lack of understanding and constructive fraud are contingent upon a construction of the propounded instrument. In short, if the instrument is to be read in a manner most advantageous to her, then the testator was a man of understanding and not the victim of fraud but, on the other hand, if the paper does not provide the widow with those advantages, then the *215 testator lacked understanding and was imposed upon in some manner.
There cannot be read into the objections of any party the contention that the formalities of execution, as required by section 21 of the Decedent Estate Law, were not met because, if this were possible, assertions that the instrument was duly executed if read in one manner but improperly executed if read differently would be .so contradictory as to be absurd. For the same reason there is no basis for the slightest inference that the testator lacked testamentary capacity and the proponents have met the burden in this regard. The ultimate facts are that a competent testator published an instrument as his will, subscribed the instrument as his will and requested the witnesses to attest the instrument as his will. Under these circumstances, in the absence of fraud, undue influence or duress, may a court in a probate proceeding inquire as to a testator’s understanding of the operative effect of the text of an instrument which he has declared to be expressive of his testamentary purposes? The authorities answer this query in the negative.
In Matter of Webb (122 Misc. 129, affd. 208 App. Div. 793) Surrogate Foley commented (pp. 135-136): “ If a will could be contested upon the ground that the testator did not understand the legal effect of technical provisions or phrases in the instrument, a new and fertile source of depleting estates, delaying probate and compelling settlements would be developed. The consequences are appropriately stated in Atter v. Atkinson, L. R. 1 P. & D. 664, 670: ‘ Suppose that a long will, with a number of complicated arrangements, is read to a competent testator, and is executed by him; if we were permitted, sometime after his death, to enter into a discussion as to how far he understood and appreciated the bearings of all the different parts of the will, we should upset half the wills in the country.’ ”
Again in Matter of Cotter (180 Misc. 399) Surrogate Foley applied the same reasoning and held that there could be no fact issue in a contested probate proceeding respecting the testator’s knowledge as to the terms of his will in the absence of proof of mental incapacity or imposition practiced upon the testator. In the Webb decision the Surrogate referred to Matter of Davis (182 N. Y. 468, affg. 105 App. Div. 221) as the leading case upon the rule and also cited other authorities. The rationale of the Webb decision was accepted in Manion v. Peoples Bank of Johnstown (292 N. Y. 317, 321) where Judge Loughban said: “ Courts are not at liberty to inquire as to a testator’s understanding or appreciation of the legal implications of words that *216 were selected for him by a draftsman of the will. (See Matter of Watson, 262 N. Y. 284, 293; Dwight v. Fancher, 245 N. Y. 71; Matter of Gertie E. Webb, 122 Misc. 129, 135, 136; 208 App. Div. 793).” (See, also, Matter of Forbes, 60 Hun 171, affd. 128 N. Y. 640; Matter of Miceli, 1 Misc 2d 375; Matter of Jones, 157 Misc. 847 and a case construing a probated will, Matter of Baylis, 78 N. Y. S. 2d 893.)
This rule as to the significance of mistake, as affecting the probate of a will, has been generally accepted. A concise statement appears in Matter of Burt (122 Vt. 260, 268) where the statement was: ‘ ‘ What the testator has done, not what he meant but failed to do, is to be given effect.” In an article by Mr. Roland Gray (26 Harv. L. Rev. 212, 225) the writer said: “ Probably a testator can, if he wishes to do so, adopt whatever words his attorney, or any person entrusted with the preparation of the will, may have written. But usually a testator, in fact, only adopts the words written, upon the supposition that such person has carried out his instructions. Here again, however, it is immaterial that, through a mistake as to the law or as to the effect of words, the will as drawn by the attorney fails to carry out the testator’s intentions. The attorney, in a sense, has not carried out the instructions. But the attorney’s mistake, made in the course of attempting, in good faith, to carry out the testator’s instructions, is in effect the same as the testator’s mistake. It makes no difference whether the testator is aware of the language of the will or not. The mistake is as much his own in the eye of the law, in one case as in the other. Any other rule would permit too wide an inquiry into the correspondence of the legal effect of the will with the testator’s intentions.” (See, also, Matter of Gluckman, 87 N. J. Eq. 638; 57 Am, Jur., Wills, § 376.)
There is no suggestion in this proceeding that the testator lacked the mentality or intellect to appreciate the consequences of his testamentary act and it must be accepted on this record that he knew the contents of the propounded paper and possessed the competency to comprehend its provisions. In view of this, no purpose will be served by a consideration of those decisions which discuss a knowledge of the contents of a paper in connection with the issue of volition. The issue here concerns a possible mistake or misapprehension on the part of the testator as to the construction to be given to his will and the issue is so presented by the opposing parties, each side contending for a particular interpretation of the instrument and willing to recognize the complete validity of the instrument under such interpretation: ‘ ‘ If the issue of intervention and subversion of *217 the decedent’s volition he not raised, and the will he conceded to be the handiwork of the decedent and the draftsman, his agent, it will be given effect according to its provisions. The assertion, then, that the testator must have comprehended the scope and bearing of the provisions of the instrument is not to be understood as importing that he must have appreciated the legal effect of the language employed by the draftsman.” (1 Davids, New York Law of Wills, § 80.)
If there is a mistake in the propounded paper, it does not appear on the face of the instrument and it would not seem that the existence of a mistake can be established as either an obvious or conclusive fact. A conclusion can be arrived at only by a process of deduction premised upon extraneous proof, particularly the opinion of the draftsman as to the probable purpose of the decedent and evidence as to the financial ability of his estate to accomplish the dispositions in the propounded instrument. But this testator would not be the first decedent to attempt to bequeath more than he possessed.
The charges of fraud “ innocently made” or constructive fraud have not been established and appear without basis. There is no assertion that an affirmative fact misrepresentation of any kind was made to the decedent and we do not have a situation where it can be said that the decedent relied upon advice as to a legal or technical question. If there was a mistake, it was either an error in simple arithmetic or an oversight attributable to both the draftsman and the testator. The citations in support of the alleged claim of fraud concern bilateral agreements. In his discussion of the subject in the Harvard Law Review (vol. 41, p. 329) Mr. Joseph Warren distinguished transactions inter vivos and placed testamentary instruments in an entirely different category.
There is no occasion at this time to determine the meaning and significance of the instrument insofar as any ambiguity or seeming contradiction may appear in its text, as this is solely a matter of construing the instrument after it has been established to be a valid will. The testator was competent to execute a will, he did execute the propounded instrument in the manner required by law and such execution was not induced by fraud, undue influence or duress. These conclusions require that the propounded instrument be admitted to probate.
The meaning of the will, its interpretation and its possible correction can be accomplished only after the will has been admitted to probate. It is the privilege of a court to deny probate to an instrument which the testator has declared to be his will in the course of a statutory execution of the paper only if *218 it is established that the testator was incompetent, under some restraint or the victim of fraud. This record does not permit the court to reject the will upon anyone of these grounds.
The motion for summary judgment is granted, the objections to probate are dismissed and the proceeding is remitted to the probate department of this court as an uncontested probate proceeding. Upon admission of the instrument to probate, a construction may be had in this probate proceeding upon the application of any interested party or, if a construction shall not be requested in this proceeding, application for construction may be made by appropriate later petition. The objection pertaining to the domicile of the decedent is of no effect upon the validity of the propounded paper as this court has jurisdiction of the proceeding irrespective of the decedent’s domicile (Surrogate’s Ct. Act, § 45). The assertion of a right of election under section 18 of the Decedent Estate Law presupposes a valid will and requires no other comment at this time.