John M. Keane, S.
Cunning is the fictional hallmark of the individual who inveigles an elderly person alone in the world to execute a will naming him the sole' beneficiary. In this real world, however, facts frequently do not fit into the neat pattern created by a skilled author. So it is here.
In late June, 1964 (the exact day is in dispute), Jesse C. Rounds was an 88-year-old widower living alone, his only child, a daughter, then being dead some two years. On that day, one William T. Seeley, the sole beneficiary under the instrument being offered for probate herein, had arranged for two men to meet at the apartment of Jesse C. Rounds to act as witnesses to the instrument before the court. He accompanied one of the men, William Evanow, to the apartment.
In the kitchen, this instrument was signed, first by Jesse C. Rounds and then by William Evanow. Shortly afterwards Mr. Evanow left the apartment. Later, one Claude H. Whiting, a long-time friend of Jesse C. Rounds, came to the apartment. He signed his name as the other witness.
On September 8, 1964, less than three months later, Jesse C. Rounds died, leaving as his only distributees, two brothers. One waived the issuance and service of a citation and consented to the probate of the instrument. The other was served with a citation. Neither brother has appeared in this proceeding.
On September 9, 1964, a prior will of the decedent, dated May 8, 1962, was filed in this court by William K. English, an attorney and the executor named therein. This proceeding was begun on October 6, 1964. In accordance with section 140 of the Surrogate’s Court Act, the beneficiaries named in said prior will, (1) Jehovah’s Witnesses, Binghamton Congregation; and (2) Watch Tower Bible and Tract Society, were made necessary parties to this proceeding, as was William K. English, the executor and draftsman of the will on file.
Upon the return date, appearances were made by Jehovah’s Witnesses, Binghamton Congregation; Watch Tower Bible *879 and Tract Society, and William. K. English. Counsel for these parties requested an examination of the witnesses to the will pursuant to section 141 of the Surrogate’s Court Act.
This examination was conducted before the Surrogate. The proponent also produced the draftsman of the will who was not an attorney. After the examination of the subscribing witnesses and the draftsman of the will, the beneficiaries, Jehovah’s Witnesses, Binghamton Congregation; Watch Tower Bible and Tract Society, and William K. English, filed objections to the probate of the will. One ground was that it was not duly executed in accordance with section 21 of the Decedent Estate Law. The second was that if it was properly subscribed and published, it was done so as the result of the fraud, duress and undue influence of William T. Seeley and others whose names were unknown.
Issue having been joined, the usual practice would be to set the matter down for a trial. However, counsel for the objectants made a motion for summary judgment, requesting that the petition for probate be dismissed and the instrument be denied probate as the last will and testament of Jesse C. Bounds, deceased. Counsel for the objectants contend that there are no triable issues of fact and, therefore, summary judgment should be granted in their favor. Counsel for the proponent cross-moved for summary judgment, requesting that the instrument be admitted to probate.
The objectants cite Matter of Pascal (309 N. Y. 108 [1955]) as authority for the availability and remedy of summary judgment in Surrogate’s Court. As to the availability of the remedy, there is no dispute. This court believes that the entire paragraph in the decision in the Court of Appeals concerning the right of a contestant to invoke summary judgment should be read. The paragraph is as follows (p. 113): “We agree with the Appellate Division that a contestant in a surrogate’s proceeding may invoke the provisions of rule 113 of the Rules of Civil Practice, wherever otherwise appropriate * * * [citing statutes and cases], although occasion for granting such relief may be rare in a probate proceeding.” (Emphasis supplied.)
This court believes that the occasions for granting relief through summary judgment would be rare.
A second decision in which a proponent sought relief by way of a motion for summary judgment is Matter of King (16 A D 2d 614 [1962]). The Surrogate denied the relief in that case as a matter of law, in a decision reported at 27 Misc 2d 502 (1960), because it was based only upon the examination *880 of the witnesses conducted under section 141 of the Surrogate’s Court Act.
The Appellate Division felt that this was not a correct statement since other depositions can be used in a motion for summary judgment. Because of the short time that had elapsed after the examination of the witnesses in the King case, the Appellate Division remitted the matter to allow the contestant to have opportunity for further investigation whether by pretrial procedures or otherwise in order that a determination could be made. The Appellate Division did not grant the motion for summary judgment but gave leave to renew it.
In Matter of Devine (41 Misc 2d 211, 214 [1963]) Mr. Surrogate Cox granted summary judgment to the proponent but significantly he stated: ‘ ‘ Extensive pretrial examinations have been had and the respective positions of the parties are clear. A record has been created which permits a disposition of the objections to probate upon this motion.”
In Matter of King (27 Misc 2d 502 [1960], supra). Judge Cox had denied the relief when only the examination under section 141 of the Surrogate’s Court Act was before him.
In Matter of Stiebing (206 N. Y. S. 2d 836 [1960]), Mr. Surrogate Hildreth granted the objectant’s motion for summary judgment and denied probate to the instrument. The facts in that case clearly indicated that there was no compliance with section 21 of the Decedent Estate Law and the motion was properly granted.
On the question of due execution, the contestants make two basic objections. First, the decedent did not declare the instrument to be his will to Mr. Evanow before the latter signed as witness in his presence. .Secondly, the decedent did not acknowledge his signature to Mr. Whiting who signed at a later time. To sustain these claims, references have been made to parts of the transcript of the examination held pursuant to section 141 of the Surrogate’s Court Act.
This is not the usual setting for objections to probate. We do not have here those most closely related to the decedent by blood warring with strangers. The decedent’s two brothers did not appear. This is a quarrel between strangers unrelated to the decedent by blood or marriage.
Under section 144 of the Surrogate’s Court Act, the Surrogate “must be satisfied with the genuineness of the will, and the validity of its execution ” before admitting it to probate. Conversely, he must be satisfied that some essential fact is lacking before he can deny probate.
*881 One need not be learned in the law to understand and appreciate the wisdom of the Legislature in setting strict standards for the valid execution of a will. It is true that with the skilled and experienced attorney, the procedure followed in executing wills approximates a ceremony akin to a religious ritual, being ever unvarying.
While the form is helpful, it is the substance with which the court is concerned. So the making of wills and supervision of their execution is not the prerogative of a privileged class, experienced though they may be. Anyone can perform this function. When someone unaware of the letter of the law takes over in the preparation and supervision of execution of wills, litigation frequently ensues. Then the court eventually must decide if the substance of the statutory strictures was followed.
So it is here. The will was not prepared by a lawyer. The execution, supervised by the sole beneficiary, was inept. In addition to the excerpts of the examination quoted by opposing counsel, the court has carefully read the entire transcript. Although the court heard the examination, it did not participate and ask questions of the witnesses. The basic purpose of the examination under section 141 of the Surrogate’s Court Act is to determine the propriety of filing objections to the instrument offered for probate. If the testimony develops similar to Matter of Stiebing (supra), summary judgment can be granted.
However, where some answers are unresponsive and equivocal, where there is a variation in answers to similar questions, this court believes there is a triable issue of fact. This court is fully conscious of the purpose served by the summary judgment procedure when there is no triable issue of fact. On the evidence presently before it, this court will neither admit nor deny probate to the instrument presently before it.
Therefore, the motion of the objectants to dismiss the petition for probate and to deny probate to the instrument offered by the proponent is hereby denied. In like manner, the cross motion of the proponent to admit said instrument to probate is denied without prejudice. No demand having been made for a jury trial, the matter will be placed on the Nonjury Trial Calendar. No costs are allowed herein.