OPINION OF THE COURT
Millard L. Midonick, S.
In this probate proceeding the parties are in the process of completing the examination of the attesting witnesses. (SCPA 1404). At the same time, three motions have been made for omnibus relief. While most of the relief relates to disclosure and would be automatic in an ordinary situation, this case involves an in terrorem clause. Moreover, movants raise a novel theory of undue influence and its application which necessitates an examination of the facts.
Decedent died on August 11, 1978 at the age of 81. He was survived by his fourth wife, Jaquine Lachman, a petitioner, and by three children, Charlene Rita Lachman, one of the two movants, Linda Lee Lachman and Charles Robert Lachman, Jr. The propounded instrument was executed on June 23, 1978. Pursuant thereto Jaquine Lachman (hereinafter referred to as petitioner) receives slightly less than one half of the gross estate, charities receive slightly less than one half of the gross estate and the residue passes to the above issue. The in terrorem clause provided that "If any person named as a beneficiary * * * shall contest or file objections to the admission to probate of this Will, all provision herein made for any such person shall be void” and shall be given over "to my wife, JAQUINE, if she shall survive me”.
In or about September, 1976, negotiations commenced with respect to the marriage between decedent and petitioner and to the proposed antenuptial agreement. Ultimately that agreement was signed on May 13, 1977, by the terms of which petitioner would receive substantially less than provided for her in the propounded instrument. On May 18, 1977, decedent and petitioner were married.
Prior to these two latter dates, on May 4, 1977, the dece *23 dent’s third wife (not his widow), mother of Charlene Rita Lachman (hereinafter referred to as respondent), commenced a conservatorship proceeding against decedent. Decedent successfully opposed that proceeding, the trial court, Mr. Justice Nathaniel T. Helman of the Supreme Court, New York County, having found him to be in full possession of his mental faculties. The decision of the court went on to find that the decedent was: "fully able to understand the nature of this proceeding and the issues involved, fully cognizant of the tremendous financial holdings which he possesses and of the need to preserve them by proper consultation and advice, exchanged with persons whom he regards as sufficiently endowed with specialized learning in financing for him to consult with them, both orally and on the telephone, as frequently as necessary, a witness who responded to questions both on direct and cross-examination in what the Court regards as a highly intelligent, sensible and sound fashion, with an indication that there is nothing in his mental makeup which could possibly become the subject of criticism so as to suggest that a conservator would have to be appointed by the Court to take care of any of his personal or business affairs.” (Transcript of memorandum decision: Matter of Lachman, Supreme Ct, New York County, June 1, 1977, Helman, J, p 15a.)
The propounded instrument was executed about one year after this finding.
In October, 1977, the attorney, who represented the decedent on the antenuptial agreement and at the conservatorship proceeding, drafted and supervised the execution of a will for decedent which provided for legacies to petitioner substantially in excess of the maximum marital deduction. That attorney is one of the two movants herein (to be referred to hereinafter as movant). Decedent consulted, as to superseding that will, officers of his bank and the firm of attorneys who represented petitioner on the antenuptial agreement and who continued to do so generally. As a result on December 7, 1977 a new will (bearing date between October, 1977 and that of the propounded instrument, June 28, 1978) was executed which had been drafted by that firm (hereinafter referred to as petitioner widow’s counsel). That will provided also for a legacy for the widow greater than the propounded instrument, but less than the October, 1977 will, apparently to avoid the overfunding of the marital deduction share. After the execu *24 tion of that will, further discussions occurred and petitioner widow’s counsel proceeded to draft the propounded instrument. In May, 1978 there are indications that decedent contemplated reducing petitioner’s legacy from somewhat less than one half to about one quarter of the estate and correspondence was had with respect thereto. Nevertheless, no will was ever executed with such a provision and the propounded instrument does not so provide, but maintains the widow’s share to somewhat less than one half of the estate.
Several dispositive provisions of the propounded instrument, including the major legacy of almost one half of this estate to the widow, and including her nomination as an executrix, condition her benefits if she "shall have been married to me and living with me as my wife at the date of my death”.
In the first motion, respondent seeks to compel completion of the SCPA 1404 examinations which require rulings on an exhaustive list of questions which were objected to. Before ruling on these objections, this court notes that there have been extensive examinations and answers taken on eight separate dates, which are transcribed on over 660 pages, and that numerous documents already have been turned over. This court has reviewed each of the over 75 objections raised by the papers, which necessitated a reading of the majority of the transcript in order to understand the nature of each of the questions, such as: whether they had been answered elsewhere, whether they were relevant, etc. Based upon the entire proceeding, it is the ruling of this court that each of the objections should be sustained and that no further SCPA 1404 examinations are warranted. Either the questions were answered or else they are not answerable for a variety of reasons.
In the same motion, respondent has sought production of those documents requested at the examinations but which have not been produced. The proponents have not opposed this relief and are directed to produce the items referred to in the motion papers. Therefore, this first motion is granted solely to the extent of directing the production of the documents agreed to be provided but not yet provided and is denied in all other respects.
Respondent has made a second motion in which she seeks to stay the entry of the probate decree, to examine petitioner, to examine the petitioner’s individual attorney who is a member of petitioner’s law firm, to examine decedent’s *25 private secretary and his doctor, to compel them to produce certain items, to extend time to file objections and to construe the provisions of the will relating to the in terrorem clause so as to indicate which of the above acts would violate that clause.
The latter motion is clearly designed to elicit information on the issue of undue influence or lack of testamentary capacity. Ultimately, respondent hopes to reduce petitioner’s legacy from approximately one half of the estate to one quarter of the estate without denying probate to this will. The indication is that respondent daughter and movant (former attorney of decedent seeking to intervene) will allege that petitioner widow unduly influenced decedent to change his mind from executing a will with a legacy of one quarter of the estate to petitioner, to the execution of the propounded instrument with a legacy of not quite one half of the estate. An integral part of the allegations are assertions that petitioner widow’s counsel was a party to the undue influence.
A secondary issue which is raised in the papers is the question of whether petitioner will be able to qualify as a fiduciary in light of the condition in the propounded instrument that she "shall be married to me and living with me as my wife at the date of my death”.
The stumbling block, however, to the granting of this motion (to examine the widow, her attorney and others) prior to filing objections to probate, is the in terrorem clause which inhibits the filing of objections to probate which is the necessary first step to disclosure of others than the attesting witnesses.
As this court and others have indicated, the law is well established that a construction of a will cannot be had until probate has been decreed (Matter of Zurkow, 74 Misc 2d 736, 738; Matter of Webb, 122 Misc 129, affd 208 App Div 793). Nevertheless, this court has taken the position, as to in terrorem clauses in a will, of indicating which disclosure procedures in a probate proceeding do not violate EPTL 3-3.5 (Matter of Zurkow, supra; cf. Matter of Raubfogel, NYLJ, Oct., 26, 1973, p 18, col 1). Those persons who can be examined under SCPA 1404 without violating an in terrorem clause are the attesting witnesses and any nonattesting witness produced by proponent (Matter of Briggs, 180 App Div 843; Matter of Zurkow, supra, p 739; Matter of Baum, 7 Misc 2d 937).
The facts of this case, including the provisions of the will, do *26 not disclose circumstances which require the submission of an affidavit in conformity with Matter of Putnam (257 NY 140) and Matter of Satterlee (281 App Div 251). If the Putnam doctrine had applied, as in Matter of Zurkow (supra), this court required the submission of affidavits by proponent, a nonattesting witness and attorney and, accordingly, permitted cross-examination on the statements included therein. Although reargument was granted in Matter of Zurkow (NYLJ, Oct. 12, 1973, p 16, col 8), this court adhered to the position that an affidavit of the proponent was required, to which cross-examination was available.
Herein, petitioner widow is not subject to the same inference against her and is not required to explain her legacy at this time. Her relationship to the testator is not that of an attorney, doctor, clergyman, accountant or the like, nor does her having been a client of the firm which drafted decedent’s will lead to a burden of explanation. (Matter of Putnam, supra; Matter of Satterlee, supra; cf. Matter of Weinstock, 40 NY2d 1, 7.) In addition she is not an attesting witness and an affidavit or testimony is not required of her at this time, before objections to probate are filed, on any other grounds.
Whether or not petitioner widow may have unduly influenced the decedent is not an issue presently before this court, there being no inference of such behavior attributable to her. Consequently, petitioner is not subject to the examination requested prior to the filing of objections. Nevertheless, she may be subject to a limited examination after probate as hereinafter indicated.
Petitioner widow is subject to the requirements of SCPA 707 and to compliance with the conditions provided in the will before letters testamentary can be issued to her. This court has the duty to appoint only those persons who can so qualify for letters as provided in this will (cf. SCPA 707). As a result, this court will have the inherent authority to inquire into allegations which relate to her qualifications.
The papers disclose allegations that petitioner widow might not be able to comply with the restrictions provided under the will for issuance of letters to her, the requirement of being married to and living with decedent at the time of his death. Generally, the issue of qualification should be left until the probate has been approved (cf. SCPA 1416). Such procedure is even more compelling herein since the question raised is applicable only if the will is admitted to probate. A party *27 having standing can, therefore, seek disclosure, if so advised, at that latter time, but before issuance of letters testamentary.
Examination of the petitioner’s individual attorney, of the decedent’s personal secretary and of his doctor can be had only after the filing of objections (Matter of Briggs, 180 App Div 843, supra). Similarly, the discovery and inspection of documents with respect thereto can be had only after objections are filed. As a result, these, too, must await further stages herein.
For the foregoing reasons, the second motion is granted to the extent of staying entry of the probate decree until after the time to file objections will have elapsed and to the extent of permitting objections to be filed within 20 days after the completion of the continued disclosure as hereinabove permitted as to documents only, and is denied in all other respects.
The third motion is by the movant, who is named as an executor in a prior will, for leave to file objections, to act as an objectant, to conduct pretrial examinations and otherwise to be permitted to conduct or seek disclosure as a party. He also seeks a determination that this relief is not a violation of the in terrorem clause. It must be noted that he represents the other two children of decedent at the present time, children of a marriage prior to that of decedent and his widow.
Permission has been granted to a nominated executor for leave to file objections and to proceed as a party pursuant to SCPA 1410 for "good cause shown” in a number of instances (Matter of Melcher, 54 AD2d 830; Matter of Silverman, 91 Misc 2d 125; Matter of Molnar 76 Misc 2d 126; Matter of Lerner, 72 Misc 2d 592). Movant contends that the relief should be granted herein based upon alleged "good cause shown”; to wit: a conflict of interest by petitioner’s counsel and an unexplained change in the decedent’s intent, both of which were the result of alleged undue influence, thus preventing the petitioner’s legacy from being reduced from one half to one quarter. The facts however do not warrant this court allowing movant to proceed as a party, at least at this stage of the proceeding. In each of the above cases objections had been filed by others. No objections have been filed herein.
Movant had been the attorney for decedent for more than 25 years and had drafted a number of wills for him. Whichever one of the parties is correct as to the reason for the admitted error in the will last drawn by this movant in *28 October, 1977, which provided for an excess marital gift and which designated him as an executor, other counsel was engaged to draft the propounded instrument. Based upon all of the facts, although the movant’s motives may be sincere and not in favor of or biased for any of the parties, this court will not permit him to be the only person to cause a probate contest (Matter of Hatzistefanou, 77 Misc 2d 594). There are sufficient parties who are present and could raise the issues, including the State Attorney-General, so as to ensure the probate of only a genuine and valid will (see SCPA 1410).
Furthermore, one of the most important elements for granting him permission to appear as a party is the presence of "good cause shown”. There is, however, no such proof. The papers do not include any allegations of lack of testamentary capacity. As to undue influence, the allegations lack specificity.
Even the theory of reducing the petitioner’s share upon an alleged intent of testator to change is insupportable as a matter of law. The law is clear that an intent to change a will has no legal effect upon the probate (Matter of Webb, 122 Misc 129, 135, affd without opn 208 App Div 793). The only meaningful argument, therefore, is that of undue influence by petitioner. As to that, the allegations are on their face inconsistent with the facts and with the prior wills, one of which was drafted by movant. This court is being asked to "reform” a will to accord with his alleged intention which was never carried out; even if undue influence can be proved, a will can be denied, probate in its entirety, or the objectionable language inserted by undue influence can be excised (Matter of Weinstock, 40 NY2d 1, 7, supra; Matter of Eckert, 93 Misc 2d 677, affd 70 AD2d 801).
Based upon all of these factors, this latter motion by movant is denied, without prejudice to a renewal or reapplication if objections are filed by others.
In summary, the three motions are granted solely to the extent indicated above and denied in all other respects.