In the Matter of the Estate of SARAH A. SMITH, Deceased.

Surrogate's Court, Kings County, March 13, 1939.

*Maires & Maires,* for the proponent Thomas W. Maires, for the motion.

*Copans & Kanon,* for the contestant Mary G. Gray, in opposition to the motion.

*Gray & Tomlin,* for the Roman Catholic Diocese of Brooklyn, a legatee.

*John J. Bennett, Jr., Attorney-General,* for the People of the State of New York.

*Herbert Peake,* special guardian for unknown heirs.

*Cullen & Dykman,* for the Brooklyn Trust Company, temporary administrator.

WINGATE, S. The unhappy predicament in which the present proponent now finds himself is presumably partially and perhaps preponderantly due to a disregard of the sage admonition of Judge, now Chief Judge, CRANE, writing for the unanimous court in *Matter*

*of Putnam* (257 N. Y. 140, 143), that " Attorneys for clients who intend to leave them or their families a bequest would do well to have the will drawn by some other lawyer. Any suspicion which may arise of improper influence used under the cover of the confidential relationship may thus be avoided."

The terms of the will which the verdict of the jury has rejected in the present case, purported to give $400 for cemetery upkeep, $4,000 to various charities, of which $2,000 was payable immediately and $2,000 on the death of the testatrix's maid, the life use of $12,000 in trust for the latter, and legacies of certain specified items of furniture and the sum of $500 to three named individuals. The entire remainder of the estate, including testatrix's apartment house, her diamonds and furs, was divided between the proponent, who had been and was at the time of the execution of the instrument, the decedent's legal adviser, and the wife of the decedent's personal physician. It was further demonstrated on the trial that the acquaintance of the decedent with this wife was comparatively casual and that a direct gift to the physician would have conferred a doubtful benefit by reason of his financial difficulties, with the resulting inference that the testamentary gifts to his wife were really intended for him.

The will was prepared by the proponent attorney-beneficiary and its execution was supervised by an employee of his office with the physician in attendance thereat. The chief issues litigated concerned lack of testamentary capacity and undue influence. On both, the verdict of the jury was unfavorable to the will, the vote on the former being ten to two, and on the latter, unanimous.

At the time of the execution of the will, the decedent was dying of cancer and one of the proponent's own witnesses testified to statements by the indirectly benefited physician to the effect that he did not believe she would last much longer and that " she was about to pass out." The will was signed on July 16, 1937, and the decedent died on the following September twenty-first.

Considerable testimony was adduced as to the time, whether in August, 1937, or earlier, when the decedent became substantially helpless. On the one hand, certain witnesses on behalf of the contestant testified that it was prior to July first, basing the statement on the assertion that one of the witnesses left the decedent's employ and went to a hospital in the early part of July and that a certain commode was acquired prior to that time. On the other, these statements were contradicted by at least one of the witnesses produced by the proponent who swore that the commode was not purchased until after August twenty-fourth.

A second item of testimony concerned the decedent's condition during the previous winter and spring, it being stated on the one

hand that she was able to walk only with difficulty in February and not at all in the later months, and, on the other, that her condition at the several times was far less helpless and that she was able to go out and walk unassisted.

A motion has now been made to set aside the verdict and to grant a new trial on the ground of newly-discovered evidence. The evidence upon which this motion is predicated is directed to the two features of the testimony just considered, namely, to the placing of the time of complete helplessness prior to July first, by reason of the purchase of the commode and the witness' departure for the hospital and as to the decedent's degree of infirmity in and subsequent to February. It is asserted respecting the former that since the trial the proponent has discovered a paster on the commode which would enable an employee of the seller to testify from the custom of his firm that it must have been sold at the later date asserted by the proponent's witness on the trial and that hospital records indicate that the employee who was asserted to have left on account of illness did not enter the institution until August. Finally, it is proposed to demonstrate by the testimony of an X-ray examiner and a physician (who were not called on the trial) that the decedent went unassisted to their offices prior to July first, as testified by others of proponent's witnesses.

It is on this showing alone that the court is importuned to set aside both of the adverse verdicts respecting testamentary capacity and undue influence. Presumably all of the testimony thus tendered would have been admissible and relevant if offered on the trial. The pertinent question, however, is whether it complies with the description of newly-discovered evidence and of that variety of such evidence which will justify the setting aside of a verdict and the granting of a new trial.

Analysis of the evidence which is tendered indicates that it falls into two natural categories, *first*, that respecting the time of purchase of the commode and the ability of the decedent to walk unaided prior to July first; and *second*, that respecting the time when one of the witnesses went to the hospital. On the first question, witnesses actually produced on the trial testified to the substance of the proposed new testimony. The tendered additional testimony in this regard would, therefore, be cumulative only to that previously adduced. On the second question, the only effect of the tendered testimony is for the purpose of impeaching the contestants' witness on a *quasi* collateral issue.

It is the usual rule that evidence which is merely cumulative is an insufficient basis upon which to predicate the granting of a new trial (*Cameron* v. *Leonard*, 17 App. Div. 127, 128; *Piehl*

v. *Albany Railway*, 30 id. 166, 172; affd., 162 N. Y. 617; *Grafton* v. *Ball*, 164 App. Div. 70, 75; *Mason* v. *Bristol*, 180 id. 505, 506), and the same has been held in respect of proposed testimony the effect of which is merely impeachment of a witness. (*People* v. *Priori*, 164 N. Y. 459, 472; *People* v. *Patrick*, 182 id. 131, 179: *People* v. *Eng Hing*, 212 id. 373, 386: *People* v. *Becker*, 215 id. 126, 159, 160; *Collins* v. *Central Trust Co.*, 226 App. Div. 486, 487.) It has been said, however, that the rule may be varied in the former situation where the new evidence is so cogent as to furnish a reasonable assurance that a diverse result would be attained upon its introduction. (*Markert* v. *Long Island R. R. Co.*, 175 App. Div. 467, 472), and in the latter where the verdict was based solely on the testimony sought to be impeached. (*Bloch* v. *Szczukowski*, 229 App. Div. 394, 396, 397.)

In either situation, the tendered evidence is an insufficient basis for granting a new trial unless it " could not, with reasonable diligence, have been obtained for use on the first trial. (*People* v. *Prime*, 208 App. Div. 445, 448; *Grafton* v. *Ball*, 164 id. 70.) " (*Collins* v. *Central Trust Co.*, 226 id. 486, 487.)

Tested by these rules, the proposed testimony is insufficient in so far as it relates to the testimony of the decedent's excursions to her physician and to the X-ray examiner and in that it proposes to demonstrate that a certain witness went to the hospital at a date later than stated. That the petitioner knew of the decedent's alleged trips is amply demonstrated by the testimony adduced on the trial. These witnesses could then have been called by him. The latter testimony amounts only to impeachment of one of several witnesses respecting facts tending to show impairment of the faculties of the deceased.

Reduced to lowest terms, therefore, the question here presented is as to whether the newly-discovered cumulative evidence respecting the time of purchase of the commode is so vital as to furnish a strong indication that a result the reverse of that previously attained would follow were a new trial to be had on which this evidence was introduced.

In the evaluation, it must be recalled that the verdict was adverse to the proponent on two framed issues, namely, *first*, as to whether the decedent, at the time of the execution of the document, possessed the mental capacity requisite to the making of a valid testamentary document, and, *second*, whether the performance of this act was the result of her own unrestrained volition. Whereas these two issues overlap in one particular, namely, that the influence which the law deems improper is more easy of exercise upon a person whose faculties are impaired, they are in reality distinct and depend upon essentially diverse demonstrations.

In view of the noted statement of proponent's witness that the physician of decedent stated at the time of the execution of the will that "she was about to pass out," the court is unable to state an affirmative belief that a demonstration that her utter and complete helplessness postdated the execution of the will by a month instead of preceding it by an equivalent period or less, would effect such a material alteration in the composite picture as to result in a reversal of the finding of want of testamentary capacity attained by the jury.

Even were the contrary the fact, however, it is the opinion of the court that the motion for a new trial must be denied under existing rules of law. A setting aside of the verdict for want of testamentary capacity would be a nugatory act unless the affirmative finding of undue influence were also to be invalidated, since either of the adverse determinations of the jury results in the rejection of the will as a whole. In the latter regard the moving papers tender no new demonstration whatsoever. The slight difference in degree of physical condition which would be established if the proponent's new evidence were introduced and believed over that which the jury may have credited on the past trial is insufficient to turn the scales on this issue.

The present state of the law respecting the burden of exculpatory demonstration required from a person standing in a confidential relationship to a testator and who is benefited by the will is, as an abstract legal matter, in a somewhat unsatisfactory state.

In *Matter of Smith* (95 N. Y. 516, 522) it is said that the complete onus of exculpatory demonstration resting upon a person in such a situation who receives the benefit of an *inter vivos* transfer, does not rest upon one who receives a similar testamentary benefit, it being stated that the demonstration of the confidential relationship "does not alone create a presumption against a testamentary gift, or that it was procured by undue influence."

This statement is to be compared with the observations recorded in *Marx v. McGlynn* (88 N. Y. 357, 371), which are in part quoted and applied in *Matter of Putnam* (257 id. 140, 143), that "there are certain cases in which the law indulges in the presumption that undue influence has been used, and those cases are where a patient makes a will in favor of his physician, a client in favor of the lawyer, * * * or where other close confidential relationships exist. Such wills, when made to the exclusion of the natural objects of the testator's bounty, are viewed with great suspicion by the law, and some proof should be required beside the *factum* of the will before the will can be sustained. * * * This presumption of undue influence which arises in such cases is a presumption of fact."

Finally, it is said in *Matter of Putnam* (257 N. Y. 140, 143), respecting a showing of testamentary benefit to a person standing in such a relationship: " In the absence of any explanation a jury may be justified in drawing the inference of undue influence."

The legal principles deducible from these statements appear to be that the mere fact of benefit to one standing in such a relationship raises some inference of undue influence on the part of the person benefited, which " in the absence of any explanation " will alone warrant a jury in a finding of undue influence. In other words, a " presumption of fact " of undue influence arises from the demonstration of the relationship which, in the absence of all other pertinent showing is sufficient to sustain a verdict of undue influence, the dictum in *Matter of Smith* to the contrary notwithstanding.

If this inference of fact arising from the mere showing of the relationship is sufficient to sustain a verdict, the demonstration itself must amount to more than a mere scintilla of evidence and require that the issue as to the sufficiency of the exculpatory explanation be submitted to the jury whose determination thereon must, in the vast preponderance of cases, be final, as, indeed, is intimated in the quoted language from *Matter of Putnam*.

Whatever the theoretical difficulties may be in formulating a correct statement of the proper legal rule in such a situation, the experience of this court, covering a score of years of the practical approach of juries to the problem, indicates that they find no difficulty in its solution. Many cases of this variety have come before this court for trial during this period, yet it is unable to recall a single instance in which a jury has failed to reject a will which conferred a substantial benefit upon a person standing in a confidential relationship to the virtual exclusion of natural objects of the bounty of the testator. This practical operation of the minds of jurors may not be disregarded in an evaluation of the probability of success by the present proponent upon a new trial.

Here the vast preponderance of the assets of this decedent were purported to be given, actually or beneficially, to her lawyer who drafted the will and whose employee supervised its execution and to her physician who was actually present at the time it was signed, to the disappointment of a natural beneficiary of the decedent, who was in needy circumstances and in whom the testatrix had previously exhibited interest. In this situation, it would be the opinion of the court that if the validity of the document were to be submitted to a score or a hundred juries seriatim, it would be uniformly rejected.

For the reasons stated, the motion to set aside the verdict and to grant a new trial will be denied.

Enter order on notice in conformity herewith.