In the Matter of the Estate of Frank F. Flynn, Deceased. Edward J. Connolly, Respondent; Frank M. Flynn, Appellant.—In a probate proceeding, the appeal is from a decree of the Surrogate's Court, Kings County, dated October 5, 1978, which, *inter alia,* directed that the instrument in question be admitted to probate, upon a directed verdict, after a jury trial. Decree reversed, on the law, and new trial granted on the issue of whether the testator lacked testamentary capacity, with costs to abide the event payable out of the estate. On June 22, 1977 the decedent, 84 years of age, executed a will by which he left three quarters of the residue of his estate to his son Edward R. Flynn, and one quarter to his son Frank M. Flynn. Edward J. Connolly, the decedent's attorney and the drafter of the will, was named executor thereof and beneficiary of the decedent's jewelry which he was to distribute in accordance with decedent's desires previously made known to him. The will contained a further bequest leaving a piano to a granddaughter, Ingabor. On October 2, 1977 the decedent expired leaving an estate worth approximately $1,200,000. Connolly commenced this proceeding seeking to admit to probate the afore-mentioned will. Frank M. Flynn objected to probate of the will and a trial by jury on seven issues of fact followed. One of these issues was whether at the time of execution of

the paper offered for probate, the decedent possessed testamentary capacity. After both sides rested, the Surrogate found that as a matter of law the seven issues must be decided in favor of Connolly, the proponent of the will, and he directed the verdict accordingly. We find that the issue of the decedent's testamentary capacity should have been left to the jury. In determining testamentary capacity, we look to the following factors: "(1) Did [the decedent] know the nature of the act [he] was performing in executing the will? (2) Did [he] know the scope and extent of the property that [he] was disposing of? (3) Did [he] know the names and identities of those who were the natural objects of [his] bounty and [his] relations with them?" (Matter of Booth, 138 Misc 381, 399.) As to the first factor, it is plain that, although the decedent may not have read the will at the time of execution, he nevertheless understood the nature of the act he was performing. However, the evidence introduced on the second and third factors raised questions of fact. As to the second factor, the evidence showed that the decedent maintained approximately $100,000 in a noninterest bearing checking account. He resisted advice to transfer these funds into interest-bearing accounts, and maintained the large balance even though he received monthly income from investments which far exceeded his current living expenses. Further indicating that the decedent may not have fully appreciated the extent and value of his estate was testimony that he stated that he intended to leave a little more to his son Edward than to his son Frank. The difference between the amounts that each would receive, approximately $600,000 of the gross estate, can hardly be termed "little". Also relevant to the question of whether the decedent knew the content of his estate is the bequest regarding jewelry. The executor, Connolly, was to distribute the jewelry in accordance with written instructions prepared by the decedent's late wife. However, much of the jewelry had been stolen in a robbery prior to the execution of the purported will and was therefore no longer available for distribution. Nevertheless, the decedent made no effort to amend the written instructions to reflect the lost jewelry. As to the third factor, the identities of those who were the natural objects of his bounty, the decedent left the piano to his granddaughter Ingabor. However, the decedent did not have a granddaughter by that name and apparently meant to leave the piano to his granddaughter Tegan. There was some testimony that the decedent did not remember his granddaughter's name. In addition to the above evidentiary matters, a significant issue was raised regarding Connolly's credibility. Connolly was a primary witness on the general question of the decedent's testamentary capacity. The above factors, when taken together, are sufficient to raise a question of fact which required submission to the jury. It is of no significance that a verdict in favor of the objectant appears unlikely; it matters only that on some view of the evidence, a jury could conceivably return a verdict in favor of the objectant (cf. Matter of Della Rocca, 59 AD2d 891). This very minimal standard was satisfied in the instant case and it was therefore improper to direct a verdict on the issue of testamentary capacity. We note, however, that the Surrogate properly directed a verdict as to the other six issues, and remand for trial only on the question of testamentary capacity. Lazer, J. P., Rabin, Gulotta and Shapiro, JJ., concur.