20

In the Matter of the Estate of NELLIE E. LAWSON, Deceased. GEORGE A. SHAFFER, Individually and as Executor of NELLIE E. LAWSON, Deceased, Appellant-Respondent; MOLLY A. GRAHAM et al., Respondents-Appellants; GRACE CHURCH, Appellant. (Appeal No. 1.)

In the Matter of the Estate of NELLIE E. LAWSON, Deceased. GEORGE A. SHAFFER, Individually and as Executor of NELLIE E. LAWSON, Deceased, Appellant; MOLLY A. GRAHAM et al., Respondents; ALEXANDER KRYSHCHUK, an Infant, Appellant. (Appeal No. 2.)

Fourth Department, May 23, 1980

## APPEARANCES OF COUNSEL

*Helmer, Shaffer & Johnson (Alderman, Alderman, Samuels*

& Schepp [Bernard Samuels] of counsel), for George A. Shaffer, appellant-respondent.

Drake & Drake (Charles Drake of counsel), for Molly A. Graham and another, respondents-appellants.

Coupe, Abend & Connors (J. Leo Coupe of counsel), for Grace Church, appellant.

Abelove, Siegel, Abelove & Hester (Norman I. Siegel of counsel), for Alexander Kryshchuk and others, appellants.

## OPINION OF THE COURT

HANCOCK, JR., J. P.

The proponent appeals from a decree made by the Surrogate of Oneida County after a jury trial dismissing his petition for probate and denying probate to a paper dated October 24, 1975 purporting to be the will of Nellie Lawson. The basis for denial was the jury's finding that the execution of the paper had been caused or procured by the undue influence of the proponent, George A. Shaffer, decedent's attorney and the draftsman of the purported will. Under the instrument, the attorney is appointed executor and receives a bequest of $20,000. There is concededly no direct evidence of undue influence. Nevertheless, the Surrogate, applying the rule as stated in Matter of Putnam (257 NY 140) held that the jury could infer from the fact that Mr. Shaffer was decedent's attorney and the draftsman of her will in which he was named a beneficiary that undue influence had been exercised and that it was incumbent upon him to come forward with proof explaining the bequest. Proponent's primary contention on appeal is that the record presents no triable issue as to undue influence and that the Surrogate should have dismissed that objection.

If we conclude that the court properly submitted the issue of undue influence to the jury, we must then decide whether the jury's rejection of the explanation of the bequest offered by Mr. Shaffer and its finding that he exercised undue influence are supported by the evidence. Finally, if we hold that the jury's determination was proper, we must resolve the questions raised by the contentions of Diana Countryman and her sons and the Grace Church of Utica in their cross appeals; i.e., that the finding of undue influence of attorney Shaffer should not vitiate the entire will but only the bequest to him and that the will, after deletion of that bequest, should be

probated. A discussion of these questions requires a brief recital of the facts.

On August 15, 1978 Nellie E. Lawson died in Utica, New York, at the age of 103 years leaving an estate valued at approximately $150,000. Her only child, a daughter, Nora Lawson Wager, had predeceased her on June 22, 1975 without issue, and at the time of her death, Nellie Lawson's only living relatives were two nieces and two nephews, the children of two deceased brothers. Respondent-appellant, Molly Ann Graham, one of the nieces, is the only relative actively opposing probate of the will. Her two brothers did not object to the probate and the other respondent-appellant, also a niece, Mary Little (also known as Mary McLean and Mary Mac-Lean), could not be located and was represented *in absentia* through a guardian ad litem appointed by the Surrogate.

In 1975 Nellie Lawson executed two documents purporting to be wills, one dated June 27, 1975 shortly after the death of her daughter, Nora Lawson Wager, and the other dated October 24, 1975, the subject of this appeal. Neither Molly Ann Graham nor any other of decedent's relatives was named as a beneficiary in either will. The relationship between Molly Ann Graham and her aunt, particularly during the last years of testatrix' life, had not been close. Molly Ann Graham had not seen her aunt since 1964 and had not corresponded with her since 1955. As to the contacts between decedent and her other niece and her two nephews, the record contains no evidence.

Named in the October 24, 1975 instrument as principal beneficiaries are: Diana Countryman, her three sons (Dale Countryman, Leon Countryman and Alexander Kryshchuk), George A. Shaffer, the Stevens-Swan Humane Society of Oneida County and the Greater Utica United Fund. Diana Countryman, a nurse's aide, had worked for decedent from 1968 until her death, providing daily nursing care and other personal services including cooking, home cleaning and laundry. She had also cared for decedent's daughter, Nora Lawson Wager, after Nora's husband, Collis Wager, died and prior to Nora's death in 1975. Two of Diana Countryman's sons, it appears, had also performed services for decedent. In the October 24, 1975 document, Diana Countryman is named as a beneficiary of the largest specific bequest in the amount of $50,000 and also receives one third of the residuary estate. Each of her three sons, Dale Countryman, Leon Countryman

and Alexander Kryshchuk, receives a $5,000 bequest. The remainder of the residuary is split between the Stevens-Swan Humane Society of Oneida County and the Greater Utica United Fund, each of which receives one third. Of the several specific bequests, the one in the amount of $20,000 to proponent Shaffer is second in size. Other specific bequests in lesser amounts include the bequest of $1,000 to the Grace Church, Utica, one of the cross appellants.

Like the October 24, 1975 will, the will of June 27, 1975 contains ample provisions for the Countrymans, with a $50,-000 specific bequest to Diana Countryman and bequests of $10,000 to each of two of her three sons (Dale Countryman and Leon Countryman). In the later will, the bequests to the Countryman family were modified by adding the third son, Alexander Kryshchuk, reducing the bequest to each son from $10,000 to $5,000 and adding the one-third residuary bequest to Diana Countryman.

In the earlier will, the residuary estate had been split among the Stevens-Swan Humane Society of Oneida County, the American Humane Society and the Humane Society of the United States. Only the Stevens-Swan Humane Society remained as a residuary beneficiary in the will offered for probate, the other two humane societies being replaced in the residuary clause by Diana Countryman and the Greater Utica United Fund. The only other change of significance between the June 27, 1975 and the October 24, 1975 instruments was the addition of the $20,000 specific bequest to George A. Shaffer.

As the stated reasons for her objections to probate, contestant Graham asserted that the instrument was not the last will and testament of Nellie Lawson, that the instrument was not duly executed, that Nellie Lawson was not competent to make a will when she is claimed to have signed the instrument and that the execution of the paper being offered for probate had been obtained by the fraud and undue influence of George A. Shaffer, or some other person or persons acting in concert or privity with him.

On trial it appeared that at the time of the execution of the October instrument, Nellie Lawson, then 101 years of age, was frail physically, used a wheelchair or walker and needed constant in-home help in bathing, meal preparations and the like. With regard to her mental faculties, however, the proof is that she was alert and that her mind was active and lucid.

Although her eyesight was poor to the point that, if she could read at all, she could barely do so, she had a lively interest in current events, enjoyed conversing with those around her, listening to news broadcasts on the radio and having the newspaper read to her. Her recollection was good, and she was concerned with the affairs and problems of others. She was apparently a congenial person who liked company and took pleasure in an occasional glass of wine. A neighbor who had talked at length with Nellie Lawson in the summer of 1975 at a cookout she held in her back yard, described her conversation and conduct as "very rational".

The two witnesses to the will, law partners of appellant Shaffer, testified in regard to its execution. On October 24, 1975 they accompanied him to the home of Nellie Lawson where Mr. Shaffer produced the will and read it over to her, line by line. Both witnesses testified that they had general conversations with the testatrix and that she appeared to understand what she was doing. According to one of the partners, Mr. Shaffer explained each of the bequests to her and emphasized specifically that she was not only naming him as executor but also leaving him $20,000. The witness recalled Nellie Lawson's specific response as, "[T]hat doesn't matter; I want you to have something yourself". After Mr. Shaffer finished reading the will aloud, he handed it to her, and she appeared to read it over for several minutes. When she finished, he asked her whether she understood this to be her last will and testament, to which she responded "yes" and then executed the will. The witnesses then signed upon her request.

By way of explanation for the $20,000 bequest, George Shaffer testified that for several years, he had had a friendly personal and professional relationship with decedent's son-in-law, Collis Wager, an attorney. They had maintained their law offices in the same building in Utica since 1951, saw each other frequently and played golf and tennis together. On occasion, George Shaffer would see Nellie Lawson in her son-in-law's office but his acquaintanceship with her was casual. Not until after he became attorney for the estate of Nellie Lawson's deceased daughter, Nora Wager, in 1975, did Mr. Shaffer begin to perform legal services for testatrix. He prepared income tax returns, gave financial advice and, as noted, prepared the first of the two wills—the one dated June 27, 1975.

When the proof was concluded, the Surrogate on motion of the proponent dismissed all of the objections except that based on undue influence, i.e., those asserting that Nellie Lawson lacked testamentary capacity, that she had not been free from restraint and that the execution of the instrument had been procured by the fraud of George A. Shaffer. We agree with the Surrogate that there is no evidence in the record supporting these objections and accordingly, reject the contention of respondents in their cross appeal that one or more of these issues should have been submitted to the jury.

With respect to the objection based on undue influence, the Surrogate denied the motion to dismiss but ruled, correctly we believe, that there was no evidence that any other person or persons had acted in concert with George A. Shaffer. Accordingly, he submitted the question to the jury without reference to other persons in the following form: "Was the execution of the paper by Nellie E. Lawson caused or procured by undue influence of George A. Shaffer"? In his charge, essentially a restatement and amplification of the rule in *Matter of Putnam* (257 NY 140, *supra),* the Surrogate stated, *inter alia:* "The relationship of an attorney and client is deemed by law to be confidential by its very nature, and in this case it is not disputed that George Shaffer was Nellie Lawson's attorney and apparently was the person who drew or the draftsman of the will offered here for probate. Under those circumstances, it was incumbent upon George Shaffer to offer an explanation, and you may, though you are not required to, infer that undue influence was exercised." While the proponent excepted to the court's refusal to dismiss the objections in their entirety, there was no exception to the charge, and we observe (assuming that the decision to deny the motion and submit the issue to the jury was correct) no basis for exception.

■ We arrive then at the central question raised by proponent's appeal: Was the Surrogate in error in submitting the question of fact pertaining to the undue influence of George A. Shaffer? We conclude that he was not.

There can be no doubt that the rule in this State has long been that where a client makes a will in favor of her lawyer to the exclusion of the natural objects of her bounty, such will is regarded with great suspicion by the law and, in the absence of a satisfactory explanation, the trier of the facts may draw an inference that the instrument was procured through undue influence of the lawyer, notwithstanding the

lack of any direct proof of the fact. (See *Matter of Putnam,* 257 NY 140, 143, *supra; Matter of Smith,* 95 NY 516; *Marx v McGlynn,* 88 NY 358, 371; *Matter of Satterlee,* 281 App Div 251; *Matter of Hayes,* 49 Misc 2d 152; *Matter of Patterson,* 206 Misc 268.) Under such circumstances, the burden of proof on the issue of undue influence remains on the contestant (see *Matter of Kindberg,* 207 NY 220, 228), but it is incumbent upon "the lawyer who drafts himself a bequest to explain the circumstances and to show in the first instance that the gift was freely and willingly made" *(Matter of Putnam, supra,* p 143).

Reading *Matter of Putnam (supra)* narrowly as applying only to a situation where the natural objects of a testator's bounty have been excluded, proponent argues that the facts here take the case outside the rule because the relationship between contestants and their aged aunt had not been close in her later years and because there was no showing of any disposition on the part of testatrix to confer any benefit upon the contestants or the two nephews. While *Matter of Putnam (supra)* and *Marx v McGlynn (supra),* quoted therein, state the rule as applying to cases where the natural objects of the testator's bounty have been excluded, such status on the part of contestants does not always appear to have been required for application of the rule (see *Matter of Smith,* 95 NY 516, 526, *supra; Matter of Carpen,* 15 AD2d 773). In any event, contestants, as daughters of testatrix' deceased brothers and relatives in the third degree of blood relationship who, along with decedent's two nephews constitute her sole distributees under EPTL 4-1.1, would, at least presumptively, be the natural objects of her bounty—i.e., the persons to whom (assuming the existence of the normal familial relationship) she would be expected to wish to leave her property (see *Matter of Gallup,* 43 App Div 437, 441; *Matter of Hayes,* 49 Misc 2d 152, *supra; cf. Matter of McCarty,* 141 App Div 816, 817-820). The closeness of the relationship and the frequency of contact between decedent and her nieces and nephews, were at most, circumstances to be considered by the jury on the question of undue influence (cf. *Matter of McCarty, supra; Matter of Campbell,* 136 NYS 1086, 1097). We cannot conclude that contestants, nieces of the testatrix and two of her four living relatives, were required, in order to raise a factual issue on undue influence, to make an affirmative showing of the existence of close or affectionate bonds with their aged aunt.

Nor is the size of the bequest to attorney Shaffer so insignificant in comparison with the size of the total estate as to warrant a dismissal, as proponent contends. While it is true that bequests to attorneys have been invalidated most often in cases where the gifts have amounted to virtually all or at least a substantial portion of the estate as in *Matter of Putnam* (257 NY 140, *supra;* see, e.g., *Matter of Smith, supra; Marx v McGlynn,* 88 NY 358, *supra; Matter of Zimmerman,* 254 App Div 630; *Matter of Hayes, supra; Matter of Smith,* 170 Misc 572) this is, by no means, always so (see, e.g., *Matter of Wood,* 253 App Div 78; Ann. 19 ALR3d 575, 600-634, and cases cited therein). In decisions such as *Matter of Suydam* (84 Hun 514, affd 152 NY 639), cited by proponent, where relatively insignificant gifts to attorneys were upheld, the small size of the gift was but one of the circumstances considered by the courts in determining the factual question of whether undue influence was practiced (see Ann. 19 ALR3d 575, 600-634, and cases cited therein; see, also, *Post v Mason,* 91 NY 539, 548; but see *Haughian v Conlan,* 86 App Div 290).

In the case before us involving an estate of $150,000, we cannot say that a bequest of $20,000 which, of the several of specific bequests in the will, is second only in size to the $50,000 gift to Diana Countryman, represented such an insignificant share as to have warranted dismissal of the undue influence objection without submission to the jury.

Having held that the question of undue influence was one of fact for the jury to decide, we are pursuaded, on review of the record, that the jurors' answer was adequately supported by the evidence. Until he became her attorney and drew the first of the two wills on June 27, 1975, proponent's acquaintance with testatrix as a past friend of her deceased son-in-law appears to have been casual. There was no proof that during the few months he acted as Nellie Lawson's attorney prior to the preparation of the October 24, 1975 will, Mr. Shaffer gave her any particular assistance, performed any unusual legal service, or developed any relationship with her which would explain her decision to make him a gift of $20,000 in addition to appointing him her executor.* The proof offered clearly

---

* The June 27, 1975 will, although part of the record before us, was not introduced as an exhibit in the trial and the jury was not aware of its provisions. We observe that, had the will been admitted, the jury's conclusion could well have been reinforced by the knowledge that Mr. Shaffer *was not* named as a beneficiary in the earlier will and the absence of any showing of a change in Mr. Shaffer's relationship

does not amount to an explanation that is adequate as a matter of law.

Having determined that there are ample legal and factual grounds for affirming the finding of undue influence, we reach the contentions of Diana Countryman, Dale Countryman, Leon Countryman, Alexander Kryshchuk and the Grace Church, that the bequest to the attorney should be expunged and the will probated. Arguably, such a result would appear, at least on the record before us, to be equitable and consistent with the intentions of the testatrix. It would avoid intestacy and the exclusion of the several specific beneficiaries such as the Countrymans who were named in both the June and October wills and who appear to have been consistently regarded by the testatrix as parties she desired to benefit. Had the Surrogate himself been the trier of the facts, he could, in his discretion and depending upon his analysis of the proofs, have admitted the will to probate without the Shaffer bequest (see *Matter of Eckert,* 93 Misc 2d 677; *Matter of Weinstock,* 78 Misc 2d 182, 187; *Matter of Thorn,* 153 Misc 28; *Matter of Maguire,* 105 Misc 433, 434; see, also, *Matter of Weinstock,* 40 NY2d 1, 6; *Riggs v Palmer,* 115 NY 506, 511-512).

■ The question arises as to whether we, exercising our powers as an appellate court to review the facts and to make findings (CPLR 5501, subd [c]) and, where warranted, to grant the relief which should have been granted below (CPLR 5522; see *Glidden v Metropolitan Life Ins. Co.,* 41 AD2d 621), could or should now make such a determination. We think not. We have here a jury trial in which no intimation was made by the court or counsel that the finding of undue influence would have any result other than invalidation of the will in its entirety. The case was tried and presented by court and counsel upon the premise that such a finding would have only that effect, and the single unambiguous question submitted to the jury was whether "the execution of *the paper* by Nellie E. Lawson [was] caused or procured by undue influence of George A. Shaffer" (emphasis added). Under the circumstances, we cannot assume that the jury, in answering the question, did not intend that its finding should have just the result the Surrogate has given it, i.e., the vitiation of the entire will.

We conclude, therefore, that the matter should be remitted

---

to testatrix between June 27, 1975 and October 24, 1975 or any other explanation for her change of mind and her decision to include him as a beneficiary in the later will.

to Surrogate's Court for consideration of whether the undue influence of attorney Shaffer should have invalidated only the bequest to him instead of the entire will. What proof not now in the record would be relevant to this issue and whether the resolution of the question should be made in a jury trial or by the Surrogate sitting without a jury (SCPA 502, subd 1) are matters for the Surrogate to decide. We observe that the will of June 27, 1975 which, although in the record before us, was not an exhibit in the trial, would be relevant during a retrial as evidence of testatrix' consistent desires to benefit the parties named as beneficiaries in both wills.

■ We reject the contention of respondents that Diana Countryman and the appealing beneficiaries have no standing to contend on appeal that the Surrogate should have considered the possibility of probating the will after expunging the Shaffer bequest. The beneficiaries are clearly parties aggrieved by the Surrogate's decree which deprives them of their bequests (CPLR 5511). Nor can we agree that the disappointed beneficiaries should be precluded from raising the issue by their failure to assert it below. They were represented before the Surrogate not by their separate counsel but by the proponent, Shaffer, whose interest as to them on the issue was adverse, and there is no showing that they waived their rights to demand probate of the will without the Shaffer bequest or, indeed, that they were aware of their rights to make such demand.

Our disposition of the matter makes it unnecessary to discuss the effect of the failure to appoint a guardian ad litem for the infant, Alexander Kryshchuk, pursuant to SCPA 402. On remand, the Surrogate may cure the omission by making such appointment which we hereby direct him to do.

Similarly, our decision to remit the matter makes unnecessary a consideration of proponent Shaffer's alternative position on appeal: that if we should affirm the Surrogate's denial of probate, we should remit the matter to the Surrogate with instructions to entertain probate of the June 27, 1975 will under the doctrine of dependent relative revocation (see *Matter of Macomber,* 274 App Div 724, 725, 727; 64 NY Jur, Wills, § 457). Whether to offer the earlier will for probate is for the parties to determine; and we observe only that in the event of the ultimate complete voidance of the October 27, 1975 will, there would be nothing to prevent them from so doing.

The decree denying probate should accordingly be vacated

in part and otherwise affirmed and the matter remitted for further proceedings in accordance with this opinion.

CALLAHAN, WITMER and MOULE, JJ., concur.

Appeal No. 1.—Decree insofar as it declares the will of October 24, 1975 to have been procured by the undue influence of George A. Shaffer unanimously affirmed, and otherwise decree vacated, without costs, and matter remitted to Oneida County Surrogate's Court for further proceedings in accordance with opinion by HANCOCK, JR., J. P.

Appeal No. 2.—Appeal unanimously dismissed as moot.