■ In the Matter of the Estate of FRED O. BUSH, Deceased. — Order unanimously reversed, on the law and facts, with costs, and probate directed. Memorandum: The proponent of the will of Fred O. Bush, James J. Pringle,

appeals from an order denying probate after a jury verdict which found that, although the will had been properly executed, the decedent had lacked testamentary capacity and had been subjected to undue influence by proponent and his father, James H. Pringle, the sole beneficiaries under the will. In order to determine whether a testator possessed testamentary capacity, we look to the following factors: (1) whether he understood the nature and consequences of executing a will; (2) whether he knew the nature and extent of the property that he was disposing of; and (3) whether he knew those who would be considered the natural objects of his bounty and his relations with them (*Matter of Delmar,* 243 NY 7; *Matter of Flynn,* 71 AD2d 891, 892). There was uncontradicted testimony that testator knew and understood the nature and consequences of executing a will. Grover Bradstreet, the attorney who drew the will, testified that the testator was in good health, in good control of his faculties and that he had conversed with the testator for some time prior to executing the will in order to satisfy himself that the testator was competent. He testified that the testator told him the persons he wished to name as his beneficiaries and that he had been estranged from his wife for seven years. As a result, Bradstreet explained the wife's right of election and believed that the testator understood. Bradstreet testified further that he dictated the will in the testator's presence and read it aloud after it was typed by his secretary. The testimony of Bradstreet's secretary corroborated his, and they served as witnesses to the execution of the will. Although there was general testimony that decedent had been "odd", "strange" and "eccentric" and that he did not socialize with his family and had no friends, the behavior thus testified to had taken place many years before and was insufficient to create a factual question with respect to decedent's testamentary capacity at the time the will was executed (see *Matter of Honigman,* 8 NY2d 244; *Matter of Betz,* 63 AD2d 769; cf. *Matter of Kaplan,* 50 AD2d 429, affd 41 NY2d 870). Bradstreet's uncontroverted testimony indicates that testator chose not to leave any property to his wife, from whom he had been separated for seven years and with whom he had no children. He informed Bradstreet that he had two sisters, both of whom had two children, but there is nothing in the record to indicate a close relationship which would lead to the conclusion that he should have remembered them in his will. His choice of the Pringles as his beneficiaries, despite the fact that he had not been in contact with them for some years, is not so unnatural or unreasonable as to cast doubt on his testamentary capacity. He had apparently always felt kindly toward them and, in light of his eccentric manner and lack of affection for his family, such disposition cannot be said to be unreasonable. Lastly, testator knew the nature of his property, i.e., that it consisted of bank accounts and money on deposit at the Veterans' Administration. Although there was some question as to whether he knew the precise size of his estate, the fact that he possessed his bankbooks and handled his own financial affairs until only a few weeks before his death support an inference that he apprehended the size of his estate. Inasmuch as the proof does not permit any conflicting inferences, the court should have directed a verdict in favor of proponent on the question of testamentary capacity. As a second ground of error, the proponent contends that the jury's finding that the testator was subjected to undue influence was contrary to the weight of the evidence. We agree. The contestant, testator's estranged wife, failed to meet her burden of proving that the Pringles induced the testator to execute the will against his wishes (*Matter of Walther,* 6 NY2d 49; *Matter of Arnold,* 78 AD2d 753; cf. *Matter of Lawson,* 75 AD2d 20, 27). In order to establish that undue influence has been exercised, " '[i]t must be shown that the influence exercised amounted to a moral coercion, which restrained independent action and

destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist * * *" (*Children's Aid Soc. v. Loveridge,* 70 N. Y. 387, 394-395; see, also, *Smith* v. *Keller,* 205 N. Y. 39, 44; *Matter of Schillinger,* 258 N. Y. 186, 191)" (*Matter of Walther,* 6 NY2d 49, 53-54, *supra*). No inference of undue influence may be drawn from the fact that proponents had the opportunity and motive, absent evidence that such influence was actually utilized (*Matter of Walther, supra; Matter of Vukich,* 53 AD2d 1029, 1030, affd 43 NY2d 668). The Pringles were not present when testator discussed the will's provisions with Bradstreet, when Bradstreet dictated the will in the testator's presence, or when the will was executed. Contestant failed as a matter of law to establish a prima facie case (*Matter of Fiumara,* 47 NY2d 845, 846) and the question of undue influence should not have been submitted to the jury. (Appeal from order of Niagara County Surrogate's Court, DiFlorio, S. — contested probate.) Present — Dillon, P. J., Simons, Doerr, Denman and Moule, JJ.