■ In the Matter of the Estate of JOHN P. GEARIN, Deceased. MARILYN MULLER et al., Respondents; AGNES L. STEVENSON et al., Appellants.—Mikoll, J. Appeal from a decree of the Surrogate's Court of Greene County (Fromer, S.), entered December 19, 1986, which admitted to probate an instrument purporting to be the last will and testament of decedent.

The issues raised on this appeal are whether Surrogate's Court properly determined that (1) decedent possessed testamentary capacity at the time he executed his last will; (2) the attorney drawing the will made due and appropriate inquiry of decedent; (3) decedent was not under undue influence at the time of the will's execution; and (4) decedent executed a lawful power of attorney, permitting the transfer of funds from his bank accounts to Suzanne Muller and her daughter, Marilyn Muller, proponents of his last will and testament.

The Mullers submitted a petition seeking the admission to probate of decedent's last will and testament. Objections to probate were filed by decedent's three sisters. Decedent died on January 29, 1986 after having suffered a stroke on January 1, 1986. He had lived with the Mullers in their Greene County home since 1981, having moved there from New York City after his wife's death. He had known the Mullers for many years. He and his wife had previously vacationed at the Mullers' boarding home. The Mullers were the objects of his considerable bounty during the time he lived with them. Decedent bought Suzanne two cars, paid off the mortgage on the Muller home, bought new furniture for the home and a television set. He gave $10,000 to $15,000 a year for living expenses to Suzanne and $1,000 in Christmas gifts to her and Marilyn. Suzanne made her home available to him, supplied food, did his wash and generally tended to his needs.

Decedent's sisters were aged women and the family connection with decedent was maintained mainly by his only niece, Margaret Doscher. Decedent paid the college tuition for one of

her children. Decedent and the Doschers had visited with one another about once a year. No contact had occurred between them from September 1985 until January 9, 1986 when Doscher called to speak to decedent and eventually learned that he had been hospitalized since January 1, 1986. The Mullers failed to advise decedent's family of his illness purportedly at decedent's instructions.

While hospitalized, decedent had the Mullers call an attorney for him who drew a will designating them as sole beneficiaries of his estate. He also executed a power of attorney in Suzanne Muller's name "to pay bills". Suzanne testified that she used the power of attorney to transfer his bank accounts to joint accounts in her own and Marilyn's name. She testified that this was done at decedent's behest.

The attorney drawing the will testified that decedent appeared to be alert, specific as to his intentions and indicated that he understood that he was not leaving anything to his relatives. The attorney read the will to decedent and/or explained its contents to him. The witnesses to the will testified that defendant declared the instrument to be his last will and testament, asked them to witness it and signed it in their presence. Decedent's physician also testified that decedent, though gravely ill, had been alert, responding appropriately to his questions at least until January 14, 1986 when his condition began to deteriorate. The will was executed on January 7, 1986 and the power of attorney on January 8, 1986.

Surrogate's Court found that the only indicia of any attempt to influence decedent consisted of the Mullers' failure to notify decedent's family of his illness and their haste in taking control of his assets by use of the power of attorney he executed "to pay bills". The court also found that decedent was alert and well oriented when he signed the will. Upon concluding that there was insufficient proof of undue influence on decedent and that he had testamentary capacity to execute his will, Surrogate's Court admitted the will to probate.

On the issue of testamentary capacity, it is appropriate in a deathbed will to scrutinize whether a decedent understood the nature and consequences of executing a will, whether he knew the nature and extent of the property he was disposing of, and whether he knew those who would be considered the natural objects of his bounty and his relations with them (*Matter of Bush,* 85 AD2d 887, 888). In the instant case, the witnesses who saw decedent in the days when the will and power of

attorney were executed all attested to his testamentary capacity. Though he was gravely ill, partially disabled because of paralysis on the right side and somewhat unclear or in error in his recounting of his family history, we cannot say that Surrogate's Court erred in finding that decedent understood the nature and consequences of making his will. The will was consistent with the obvious attachment decedent had for the Mullers who, in effect, were his family circle in the last several years of his life. It was consistent, as well, with the generosity he imparted to them during his life. On the other hand, though he had a cordial relationship with one of his sisters, Agnes L. Stevenson, and her daughter, it was a relationship attenuated by time and distance. Decedent referred to his sisters and their failure "to come around". It cannot be said that his choice of beneficiaries was strange or unreasonable. Also, decedent knew the nature of his assets. Until his last illness, he was vigorous for his age, ran his own accounts, possessed his own bank books and disposed of his assets as he saw fit (see, Matter of Walther, 6 NY2d 49).

Though there was evidence that for some six months before his death decedent had purchased an inordinate amount of alcohol, he was not under the influence of any intoxicants when these events occurred (see, Matter of Haggart, 33 AD2d 124, affd 27 NY2d 900). Additionally, the will was drawn by a neutral lawyer who adequately explained to decedent the consequences of his largesse. We concur then with the finding of testamentary capacity made by Surrogate's Court.

As a second ground of error, decedent's sisters contend that the finding by Surrogate's Court that decedent was not subjected to undue influence was in error. They allege that the Mullers had motive, opportunity and did in fact unduly influence decedent. The criteria for undue influence is aptly articulated in Matter of Burke (82 AD2d 260, 269). The burden of proving undue influence was on decedent's sisters (see, Matter of Klitgaard, 83 AD2d 651). We concur with Surrogate's Court that the evidence failed to disclose undue influence. Motive and opportunity in itself is insufficient. The evidence here was consistent with legitimate influence drawn from the caring personal relationship existing between decedent and the Mullers. We, therefore, concur that undue influence was not established.

The execution of the power of attorney was also correctly upheld. The attorney drawing the document testified that he told decedent what Suzanne would be entitled to do if he executed it. Surrogate's Court also credited Suzanne's testi-

mony that decedent told her he wanted to give his bank accounts to her and Marilyn. We see no reason to argue with the resolution of issues of credibility made by the trier of fact who was in the best position to evaluate same. Accordingly, we hold that the transfer of funds was valid and intended as a gift.

Decree affirmed, with costs. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.