■ In the Matter of the Estate of MARY KURTZ, Deceased. ROBERT J. KURTZ, as Administrator of the Estate of MARY KURTZ, Deceased, Respondent; ARTHUR KURTZ, Appellant.—In a proceeding to determine title to certain real property and to discover certain personal property, Arthur Kurtz appeals, as limited by his brief, from (1) an order of the Surrogate's Court, Suffolk County (Signorelli, S.), dated December 18, 1985, which denied his motion for summary judgment, (2) a purported order of the same court, dated May 15, 1986, which denied his oral motion made at the close of evidence during trial for judgment as a matter of law, (3) a purported order of the same court, also dated May 15, 1986, which denied his oral motion to set aside the jury verdict as against the weight of the evidence, and (4) so much of a decree of the same court dated January 14, 1987, as, upon a jury verdict, invalidated the deed to the decedent's condominium which purported to transfer title from the decedent to Arthur Kurtz and directed that title to the condominium be awarded to Robert Kurtz as administrator of the decedent's estate.

Ordered that the appeal from the order dated December 18, 1985 is dismissed; and it is further,

Ordered that the appeals from the purported orders of May 15, 1986 are dismissed; and it is further,

Ordered that the decree is affirmed insofar as appealed from; and it is further,

Ordered that the respondent is awarded one bill of costs, payable by Arthur Kurtz personally.

The appeal from the order dated December 18, 1985 must be dismissed because the right of direct appeal therefrom terminated with the entry of the decree in the proceeding (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on appeal from that order are brought up for review and have been considered on the appeal from the decree (CPLR 5501 [a] [1]).

The appeal from the purported orders made May 15, 1986 must be dismissed because no appeal lies from oral rulings made in the course of a trial (see, Katz v Katz, 68 AD2d 536).

Mary Kurtz died intestate on May 5, 1984, leaving three sons, Robert, Anthony and Arthur. Following the death of Mary's husband in 1974 she was left an intestate estate of approximately $90,000. The three sons had renounced their intestate shares of their father's estate and Mary utilized these funds to purchase a condominium in 1974 for $32,000. Each of the sons held a $7,000 bond in the joint names of themselves and Mary and it was agreed that Mary was to

receive the monthly income of approximately $150 from these bonds. Immediately following his father's death, Robert visited extensively with Mary and helped her with financial planning until 1979, when this no longer was feasible due to his change in employment. Arthur then accepted the responsibility of looking after Mary's financial needs. In 1977, Mary left her clerical job at a small electronics firm to baby-sit for Arthur's two preschool children. For this she initially received $50 per week and later $60 per week from Arthur. It is noteworthy that Mary left her job at the electronics factory where she had worked for 17 or 18 years approximately 18 months before her 62nd birthday, when she would have been entitled to a substantially larger pension than she actually received from the company.

At the hearing, Arthur testified that in 1979 Mary was concerned about money so he offered to purchase the condominium from her for $20,000, which was approximately one half its value. In addition, Arthur alleged that he had orally agreed that Mary could live in the condominium rent free for the rest of her life and that he would pay the carrying charges. The legal transfer of title to the condominium was effected by an attorney who was Arthur's childhood friend and who was paid by Arthur. It is undisputed that Mary did not have independent counsel and there was no writing evidencing any intent that Mary would retain a life estate in the transferred property.

Contrary to Arthur's contention on appeal, his pretrial motion for summary judgment seeking to dismiss the proceeding was properly denied. The issues of undue influence and/or fraud on his part were properly submitted to the jury (see, Matter of Bach, 133 AD2d 455; Matter of Burke, 82 AD2d 260).

Further, our review of the record indicates that the jury verdict was supported by legally sufficient evidence and that it was not against the weight of the credible evidence. In view of the confidential relationship between Arthur and Mary, Arthur had the burden of establishing that his agreement with Mary was not the product of fraud or undue influence (see, Matter of Gordon v Bialystoker Center & Bikur Cholim, 45 NY2d 692, 698-699; see also, Matter of Anrig, 73 AD2d 947). We find that under the circumstances, the jury could reasonably find that Arthur had failed to prove that the transfer of the condominium was freely, voluntarily and knowingly agreed to by his mother, without any undue influence on his part. Mangano, J. P., Lawrence, Spatt and Harwood, JJ., concur.