OPINION OF THE COURT
Larry M. Himelein, J.
The issue presented by this case is whether summary judgment may be granted to an estate, over the objectants’ claims of fraud and undue influence, when an attorney prepares a will that leaves the bulk of the testator’s estate to a charity that *879 the attorney represents in its legal matters and also serves as Chairman of the charity’s Board of Directors.
Arlyeen M. Edel died on January 11, 1996, leaving a will executed on December 5, 1995, which has been submitted to this court for probate. The will left a number of specific bequests including $250,000 to the Olean General Hospital. The hospital was also the sole residuary beneficiary.
Charles E. Haug, Sr., decedent’s estranged son, and Patricia Ceislik, decedent’s granddaughter, have filed objections to probate, alleging fraud and undue influence as to the hospital’s share under the will. Objectants note that John M. Hart, Jr., the attorney who drafted the will, is also the Chairman of the Board of Directors of Olean General Hospital and further that Mr. Hart is a partner in the law firm that represents the hospital in its legal matters. The claim is that Mr. Hart utilized fraud and undue influence to induce Ms. Edel to leave the bulk of her estate to the hospital. Objectants also allege fraud and undue influence on the part of Dr. Robert Catalano, M.D., the Chief Executive Officer of the hospital.
Discovery is complete and the estate has moved for summary judgment contending that (1) the prime consideration in this proceeding should be Ms. Edel’s intent; (2) the opportunity to exercise undue influence is not evidence that such influence was in fact exercised; and (3) if evidence of undue influence is found, the cy pres doctrine should be invoked to insure that Ms. Edel’s estate does not pass in a way she sought to avoid. Because Ms. Edel’s intent is not specifically at issue on this summary judgment motion, and because applicability of the cy pres doctrine must await a determination of the issues of fraud and undue influence, we are concerned only with this question: is there enough evidence in this record to warrant a trial?
A review of the salient facts is appropriate. Decedent first retained Mr. Hart to draw a will in 1980. Two wills were executed by Ms. Edel in 1980 but they appear to be identical. Neither will left anything to Olean General Hospital although St. Francis Hospital, which was later acquired by Olean General Hospital, was left 40% of the residuary.
Mr. Hart became a member of the Olean General Hospital Board of Directors in 1985. In August of that year, Olean General Hospital was named a 30% residuary legatee under a new will prepared by Mr. Hart and executed by Ms. Edel. Object-ants contend that this bequest alone posed a potential conflict of interest that required a written acknowledgment by the client of the conflict. The court, however, is not convinced that an *880 attorney draftsman who serves without pay on the board of directors of a charitable organization has a conflict of interest simply because the attorney’s client names the charity in her will. Such a holding would serve to discourage attorneys from serving on the boards of charitable and civic organizations. Were that the only issue, the summary judgment motion would probably be granted.
Decedent executed nine more wills prior to her death, all drawn by Mr. Hart and all of which left most of decedent’s estate to charity. Olean General Hospital’s bequest went from 30% of the residuary to 60% and ultimately to 100%. The last will drawn, the will at issue here, also left a specific bequest of $250,000 to the hospital. The objectants contend that the increased bequests to Olean General Hospital coincide with a closer relationship between decedent and Mr. Hart, coincide with Mr. Hart’s election to the Board of Directors of Olean General Hospital and ultimately his becoming Chairman of the Board, and coincide further with Mr. Hart’s law firm’s retention to handle the hospital’s legal matters. The estate notes, however, that none of the wills executed by decedent left anything to Mr. Haug and the last five wills specifically disinherited him. Thus, the estate believes that Mr. Haug’s contentions are meritless and are simply an effort to obtain by intestacy, if the bequests to the hospital are stricken, a share in his estranged mother’s estate.
In 1989, the law firm in which Mr. Hart is a partner began doing legal work for the hospital. On December 1, 1992, Ms. Edel increased her residuary bequest to the hospital from 60% of the residuary to 100%. The following day, at a meeting of the Board of Directors, Mr. Hart moved her election as a corporate member and the motion was approved. According to the hospital, one of the benefits of corporate membership, in the event the member is hospitalized, is receiving a private room while only being billed for a semiprivate room. The ob-jectants claim that there is no evidence that this policy existed for anyone but Ms. Edel and that making her a corporate member was essentially a sham.
In June of 1994, Ms. Edel contacted Mr. Hart about a billing problem with the hospital and Mr. Hart sent her complaint to Dr. Catalano, asking him to look into the matter. Mr. Hart noted that Ms. Edel was a permanent member of the hospital and had named Olean General Hospital the beneficiary of a “major portion of her substantial estate.” Two days later, Dr. Catalano responded that he had resolved the dispute by “writ *881 ing off” a bill of $61. Dr. Catalano also indicated to Mr. Hart that he had reviewed Ms. Edel’s medical chart to determine whether the treatment she received was appropriate.
On March 18, 1995, during another hospital stay, Ms. Edel sent Mr. Hart a letter stating that she believed that board members “received their hospital room during their illness.” This appears to mean that Ms. Edel believed she would receive a private room but would only be billed for a semiprivate room. Mr. Hart passed the letter along to Dr. Catalano and asked him to look into it, noting that Ms. Edel was leaving the hospital her residuary estate and that her estate was “substantial.” Objectants contend that these communications from Mr. Hart to Dr. Catalano, discussing the substance of Ms. Edel’s wills and the size of her estate, violated the attorney-client privilege between Mr. Hart and Ms. Edel and support their claim that Hart and Catalano worked together to insure that Ms. Edel’s entire estate was left to the hospital.
Later in 1995, Ms. Edel sent a letter to Mr. Hart discussing a potential donation to the hospital and notes, “I doubt I would have given the transfer much thought if you hadn’t discussed it.” John F. McLaughlin, an investment advisor from Key Bank who handled Ms. Edel’s account, claims that he was asked to meet Dr. Catalano at the hospital on September 15, 1995. At this meeting, which was also attended by Mr. Hart, Mr. McLaughlin was handed a note alleged to have been written by Ms. Edel, directing Mr. McLaughlin to liquidate $500,000 worth of decedent’s mutual funds and give the money directly to the hospital.
Mr. McLaughlin immediately sent a memo to his superiors expressing concern about a conflict of interest between Mr. Hart’s representation of Ms. Edel and his position as chairman of the hospital board and also questioned whether Ms. Edel was aware that she would no longer receive dividends if her $500,000 was given to the hospital at that time. He also noted that immediately prior to her being admitted to the hospital, Ms. Edel intended to live off the dividends from her investment account and give the principal to the hospital only at her death, thus implying that her wishes changed after she went into the hospital. Objectants allege that Catalano visited decedent almost daily while she was hospitalized. Mr. McLaughlin added that he was not comfortable liquidating Ms. Edel’s assets and giving them to the hospital at that time unless counsel for Key Bank reviewed the situation. Ultimately, Ms. Edel’s investment account was not disturbed.
*882 On November 19, 1995, Ms. Edel wrote Dr. Catalano expressing what appears to be displeasure that neither Dr. Catalano nor Mr. Hart had explained to her that if she gifted the $500,000 to Olean General Hospital, she would lose the income from that money. The proponent of the will disputes the objectants’ contention that this letter indicates any displeasure on decedent’s part. Nonetheless, Dr. Catalano visited decedent shortly after receiving the letter and observed her to be “ill and confused” and apparently unable to recognize him. On December 5, 1995, the will sought to be admitted to probate was executed at the nursing home where Ms. Edel was then residing. She died on January 11, 1996.
In its summary judgment motion, the estate alleges certain facts it contends are “undisputed.” For example, the estate contends that Ms. Edel was strong-willed and alert. It is true that the witnesses to the will, one of whom was Mr. Hart, testified that decedent was competent when the will was executed, although she was disoriented when Mr. Hart and his secretary first arrived. However, Dr. Catalano visited decedent in the nursing home prior to her execution of the will at issue and found her to be “ill and confused” and unable to “appreciate who I was.”
The estate also argues that Ms. Edel’s many wills establish her intent to leave the bulk of her estate to charity and to disinherit her son. However, that is simply one of many facts that a jury must consider on the claims of fraud and undue influence. Moreover, the argument is perhaps more relevant if a jury should find for the objectants on those issues. The estrangement between mother and son might be important on the question of whether the bequests to the hospital should pass by intestacy or whether another doctrine such as cy pres or dependent relative revocation should be invoked to insure that decedent’s estate does not pass to someone she intended to disinherit.
The issue this court must address is whether there are sufficient facts on the questions of fraud and undue influence to warrant a trial. As part of that issue, the court must address whether Mr. Hart’s legal representation of the hospital and service as Chairman of its Board of Directors poses a conflict of interest with his representation of Ms. Edel, and if so, what impact, if any, the conflict has on the instant motion.
More than 60 years ago, in Matter of Putnam (257 NY 140), the Court of Appeals instructed that attorneys who have clients who intend to leave the attorney or the attorney’s family a *883 bequest should have the will drawn by another lawyer. Further, a lawyer who drafts a bequest to himself or herself must explain the circumstances and show that the gift was “freely and willingly made” (supra, at 143, citing Matter of Smith, 95 NY 516). Such a bequest is viewed with “great suspicion” and the absence of an explanation might permit the jury to draw an inference of undue influence (Matter of Putnam, supra; see also, Marx v McGlynn, 88 NY 357; Matter of Kindberg, 207 NY 220).
The Fourth Department has held that where a client makes a will that leaves a bequest to her lawyer, the trier of fact may draw an inference that the bequest was procured because of the undue influence of the attorney, even without direct proof of that fact (Matter of Lawson, 75 AD2d 20). The Fourth Department has further said “where there is a confidential relationship between the decedent and the beneficiary/drafter of the will, the mere fact of the bequest, standing alone [emphasis supplied], permits an inference of undue influence, and the drafter then has the burden of offering an explanation, alternative to his influence, for the contested will [citations omitted].” (Matter of Collins, 124 AD2d 48, 54; see also, Matter of Moran, 261 AD2d 936.) Thus, it appears that whenever a bequest is made to an attorney draftsman, the objectants would be entitled to a trial.
While these Fourth Department cases concern bequests made directly to the attorney draftsman, they are also notable for holding that fraud and undue influence may be shown circumstantially. Indeed, it has been held that undue influence is usually not shown by direct proof but rather established by circumstantial evidence (Matter of Panek, 237 AD2d 82). It seems to the court that summary judgment should rarely be granted in a circumstantial evidence case.
Here, of course, the will does not make a bequest directly to the attorney draftsman. However, most of the estate goes to the Olean General Hospital, which pays Mr. Hart’s law firm a substantial amount of money for legal services. Objectants note that Mr. Hart’s firm billed Olean General Hospital more than $82,000 in the two years prior to Ms. Edel’s death. They contend that this scenario is every bit as onerous as the Putnam scenario and the Putnam holding should be applied here, thus mandating a trial. Clearly, if the bequest to the hospital is deemed, because of Mr. Hart’s financial and other ties to the hospital, a bequest to Mr. Hart, Putnam (supra) and the other cases apply and a trial must be held.
*884 Matter of Henderson (80 NY2d 388), while not precisely on point, may be illustrative in connection with the instant motion. There, the testator wished to leave her attorney a bequest. The attorney declined to write himself into a will and recommended that the testator retain new counsel. She did so and executed a will which made a bequest to the former attorney. Surrogate Radigan denied the proponent’s motion for summary judgment and directed a hearing. After the Appellate Division reversed (see, 175 AD2d 804), the Court of Appeals reinstated Surrogate Radigan’s order directing a trial. While the Court of Appeals found that Putnam (supra) was inapplicable to the case, the objectant’s claims, which appear to be weaker than those made here, were sufficient to require a trial on the issues of fraud and undue influence.
In Matter of Elmore (42 AD2d 240, 241), the Third Department held that “[w]here a will has been prepared by an attorney associated with a beneficiary [emphasis supplied], an explanation is called for” (citing Matter of Lamerdin, 250 App Div 133, 135). Further, whether the explanation is adequate is a question of fact for the jury (Matter of Elmore, supra). If Elmore is strictly applied here, and the attorney draftsman simply being “associated” with the beneficiary is sufficient to require an explanation, there is no question but that a trial must be held. However, Elmore is the only case the court has found that holds so broadly.
The issue of Mr. Hart’s representation of both the hospital and Ms. Edel is important to all parties because of certain presumptions that may or may not apply. If Mr. Hart is deemed a beneficiary under the will, he must offer evidence to explain the bequests that benefit him (Matter of Collins, supra; Matter of Lawson, supra) and the objectants would be entitled to a favorable jury charge on the issue (see, PJI 7:56, 7:57). If Mr. Hart is not deemed a beneficiary, no presumption of undue influence arises and the cited charges would not be given.
Other cases have applied these principles in different contexts. For example, the rule has been applied where the beneficiary-testator relationship is that of guardian and ward (Matter of Smith, 95 NY 516, supra); physician and patient (Matter of Satterlee, 281 App Div 251; Marx v McGlynn, 88 NY 357, supra); parent and child (Matter of Kurtz, 144 AD2d 468); minister and congregant (Marx v McGlynn, supra); or the beneficiary is a nursing home operator (Matter of Burke, 82 AD2d 260). Again, however, these cases all involve instances where the bequest was made directly to the recipient and not to an *885 organization with which the recipient had a financial or fiduciary relationship. This court, absent some higher authority, declines to apply the rule of Putnam (supra) and its progeny to the facts of this case.
That holding, however, is not dispositive. Undue influence is not limited to the classic sense of fraud and duress; insidious, subtle and impalpable pressure that subverts the testator or internalizes within the testator the desire to do, not her intent, but the intent of another, can also constitute undue influence (Matter of Kaufmann, 20 AD2d 464, affd 15 NY2d 825; Matter of Antoinette, 238 AD2d 762; Matter of Tank, 132 Misc 2d 146).
Here, the amount of the bequest to the hospital that Mr. Hart served as attorney and board chairman increased the longer Mr. Hart was Ms. Edel’s attorney. The relationship between attorney and client became closer over the years and ob-jectants allege that Mr. Hart did not bill Ms. Edel for legal services he provided her during the last 10 years of her life. The incident where Mr. Hart and Dr. Catalano are alleged to have attempted to have decedent’s assets immediately transferred to the hospital is a factor for a jury to consider. While the transfer was never effected and the proponents contend that the incident is meaningless, it is not for the court to make that determination (see, Matter of Tokarz, 199 AD2d 400). Further, Ms. Edel’s own follow-up letter where she appears to be critical of Dr. Catalano because she was not told that the immediate transfer of her money would leave her without income is a factor that a jury might find supportive of objectants’ claims of fraud and undue influence.
Objectants also contend that the alleged violation of the attorney-client privilege demonstrates the extent of the conflict of interest they believe Mr. Hart had in this case. They further contend that Dr. Catalano became extremely solicitous of Ms. Edel during her hospital stays in order to insure that Olean General Hospital would receive her estate. The objectants also contend that Ms. Edel’s being made a member of the board was a fiction designed only to insure that she would leave her estate to the hospital. At this point, of course, these are only allegations; however, the court believes that only a trial can determine what the facts are and what inferences and conclusions should be drawn from the facts (see, Matter of O’Brien, 182 AD2d 1135; Matter of Raskas, 213 AD2d 718; Matter ofDelyanis, 252 AD2d 585; Matter of Moran, 261 AD2d 936, supra).
Objectant Ceislik has cross-moved for summary judgment on the grounds that (1) EPTL 3-3.2 makes the bequest to Olean *886 General Hospital void as a matter of law; (2) Mr. Hart’s testimony must be precluded pursuant to CPLR 4519; and (3) a presumption of undue influence should be applied on these facts.
EPTL 3-3.2 (a) (1) provides that a disposition made to an attesting witness is void unless there are at least two other attesting witnesses. However, the court is not convinced that the bequest to the hospital falls under this section and objectant Ceislik cites no authority in support of her contention. This court declines to hold EPTL 3-3.2 applicable to a situation where the attorney draftsman is, at most, an indirect beneficiary.
Objectant also contends that Matter of Schrutt (206 AD2d 851) prevents Mr. Hart from testifying in this case. However, Schrutt concerned the testimony of coexecutors, not the attorney draftsman. The court declines to hold that an attorney draftsman’s representation of a charity that receives a bequest requires application of the Dead Man’s Statute, especially in a summary judgment context. Moreover, the court further declines to apply the legal presumptions from Putnam (supra) and its progeny to this case. The jury will decide what influence, if any, Mr. Hart’s joint representation had on Ms. Edel in this case.
Accordingly, both motions for summary judgment are denied.